STEPNEY POND ESTATES, LIMITED *v.*
TOWN OF MONROE
(SC 16656)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 15—officially released June 4, 2002

*David O. Chittick*, for the appellant (defendant).

*Erskine D. McIntosh*, for the appellee (plaintiff).

SULLIVAN, C. J. This appeal arises from a judgment by the trial court invalidating the imposition of a conveyance tax by the defendant, the town of Monroe, on a sale by the plaintiff, Stepney Pond Estates, Limited, of land classified as forest land pursuant to General Statutes § 12-107d.[1] The defendant claims on appeal that the trial court improperly concluded that (1) it had

---

[1] General Statutes § 12-107d provides in relevant part: "(a) An owner of land may file a written application with the State Forester for its designation by the State Forester as forest land. When such application has been made, the State Forester shall examine such application and, if he determines that it is forest land, he shall issue a triplicate certificate designating it as such, and file one copy of such certificate in his office, furnish one to the owner of the land and file one in the office of the assessor of the municipality in which the land is located.

"(b) When the State Forester finds that it is no longer forest land, he shall issue a triplicate certificate cancelling his designation of such land as forest land, and file one copy of such certificate in his office, furnish one to the owner of the land and file one in the office of such assessor.

"(c) An owner of land designated as forest land by the State Forester may apply for its classification as forest land on any grand list of a municipality by filing a written application for such classification with the assessor thereof not earlier than thirty days before nor later than thirty days after the assessment date and, if the State Forester has not cancelled his designation of such land as forest land as of a date at or prior to the assessment date such assessor shall classify such land as forest land and include it as such on the grand list, provided in a year in which a revaluation of all real property in accordance with section 12-62 becomes effective such application may be filed not later than ninety days after such assessment date in such year.

"(d) An application to the State Forester for designation of land as forest land shall be made upon a form prescribed by the State Forester and approved by the Commissioner of Environmental Protection and shall set forth a description of the land and such other information as the State Forester may require to aid him in determining whether such land qualifies for such designation. An application to an assessor for classification of land as forest land shall be made upon a form prescribed by such assessor and approved by the Commissioner of Environmental Protection and shall set forth a description of the land and the date of the issuance by the State Forester of his certificate designating it as forest land and a statement of the potential liability for tax under the provisions of sections 12-504a to 12-504e, inclusive. . . ."

jurisdiction under General Statutes § 12-119[2] to hear the plaintiff's claim that the imposition of the tax pursuant to General Statutes § 12-504a (b)[3] was illegal; and (2)

[2] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[3] General Statutes § 12-504a (b) provides: "Any land which has been classified by the record owner thereof as farm land pursuant to section 12-107c or as forest land pursuant to section 12-107d, if sold by him within a period of ten years from the time he acquired title to such land or from the time he first caused such land to be so classified, whichever is earlier, shall be subject to a conveyance tax applicable to the total sales price of such land, which tax shall be in addition to the tax imposed under sections 12-494 to 12-504, inclusive. Said conveyance tax shall be at the following rate: (1) Ten per cent of said total sales price if sold within the first year of ownership by such record owner; (2) nine per cent if sold within the second year of ownership by such record owner; (3) eight per cent if sold within the third year of ownership by such record owner; (4) seven per cent if sold within the fourth year of ownership by such record owner; (5) six per cent if sold within the fifth year of ownership by such record owner; (6) five per cent if sold within the sixth year of ownership by such record owner; (7) four per cent if sold within the seventh year of ownership by such record owner; (8) three per cent if sold within the eighth year of ownership by such record owner; (9) two per cent if sold within the ninth year of ownership by such record owner; and (10) one per cent if sold within the tenth year of ownership by such record owner. No conveyance tax shall be imposed by the provisions of sections 12-504a to 12-504f, inclusive, following the end of the tenth year of ownership by such record owner."

the transfer of the property to the plaintiff by Richard T. Zimany and Alexandra T. Zimany, acting as executors of the property owner's estate, did not initiate a new ten year holding period for purposes § 12-504a (b) and, accordingly, that no conveyance tax was due on the plaintiff's subsequent sale of the property. The defendant also claims that the trial court improperly rejected its claim that, pursuant to General Statutes § 12-494,[4] a conveyance tax of $1650 was due on the conveyance

[4] General Statutes § 12-494 provides: "(a) There is imposed a tax on each deed, instrument or writing, whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, when the consideration for the interest or property conveyed equals or exceeds two thousand dollars, (1) subject to the provisions of subsection (b) of this section, at the rate of five-tenths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, the revenue from which shall be remitted by the town clerk of the municipality in which such tax is paid, not later than ten days following receipt thereof, to the Commissioner of Revenue Services for deposit to the credit of the state General Fund and (2) at the rate of eleven one-hundredths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, which amount shall become part of the general revenue of the municipality in accordance with section 12-499.

"(b) The rate of tax imposed under subdivision (1) of subsection (a) of this section shall, in lieu of the rate under said subdivision (1), be imposed on certain conveyances as follows: (1) In the case of any conveyance of real property which at the time of such conveyance is used for any purpose other than residential use, except unimproved land, the tax under said subdivision (1) shall be imposed at the rate of one per cent of the consideration for the interest in real property conveyed; and (2) in the case of any conveyance in which the real property conveyed is a residential estate, including a primary dwelling and any auxiliary housing or structures, for which the consideration in such conveyance is eight hundred thousand dollars or more, the tax under said subdivision (1) shall be imposed (A) at the rate of one-half of one per cent on that portion of such consideration up to and including the amount of eight hundred thousand dollars and (B) at the rate of one per cent on that portion of such consideration in excess of eight hundred thousand dollars; and (3) in the case of any conveyance in which real property on which mortgage payments have been delinquent for not less than six months is conveyed to a financial institution or its subsidiary which holds such a delinquent mortgage on such property, the tax under said subdivision (1) shall be imposed at the rate of one-half of one per cent of the consideration for the interest in real property conveyed."

to the plaintiff. We conclude that the trial court properly determined that it had jurisdiction to hear the plaintiff's claim. We also conclude, albeit on different grounds, that the trial court properly determined that the transfer to the plaintiff did not initiate a new ten year holding period. Finally, we conclude that the plaintiff was not required to pay a conveyance tax on the transaction in which it acquired the property. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The land at issue consists of forty-seven acres out of a sixty-five acre property located at 362 Hattertown Road in the town of Monroe. On September 29, 1971, at the request of Alexander Zimany, the then owner of the property, the state forester classified the forty-seven acres as forest land pursuant to § 12-107d. Alexander A. Zimany died in 1983, leaving the entire property to his wife, Dorothy T. Zimany. Dorothy T. Zimany died on September 26, 1986, leaving her entire estate, including the property, to her children, Richard T. Zimany and Alexandra T. Zimany. The forty-seven acre tract had been continuously classified as forest land from the time it was originally classified until the time of Dorothy T. Zimany's death.

By an executor's deed dated December 21, 1990,[5] Richard T. Zimany and Alexandra T. Zimany, acting as executors of their mother's estate, conveyed the entire sixty-five acre tract to the plaintiff for no consideration. The plaintiff corporation had been created by those individuals for the sole purpose of receiving title to the property, and they were its sole shareholders.

On February 21, 1991, the defendant's tax assessor notified the plaintiff that, if it wished to keep the forest classification on the property, it would have to notify

---

[5] The deed apparently was executed by Alexandra T. Zimany on December 20, 1990, and by Richard T. Zimany on December 21, 1990.

the state forester that there had been a change of title. The plaintiff filed the appropriate forms and, on October 21, 1991, the bureau of forestry issued an amended certificate, the stated purpose of which was to change the owner of record from the estate of Alexander A. Zimany to the plaintiff. The defendant stipulated at trial that the property had not been declassified at any time and that the amended certificate of classification was a continuation of the original certificate issued in 1971.

On December 26, 1991, the defendant, through its tax assessor, Francis W. Kascak, recorded an assessor's lien on the defendant's land records indicating that the property had been acquired by the plaintiff on December 21, 1990, and classified as forest land on October 1, 1991.[6] The tax assessor testified at trial that he recorded the lien because he did not consider the transfer to the plaintiff to be an exempt transaction under General Statutes § 12-504c (k)[7] and, therefore, he

---

[6] On January 19, 1996, the tax assessor recorded a second assessor's lien indicating that the property had been acquired on December 26, 1991. He testified at trial that he could not recall his reasons for filing the second lien.

[7] General Statutes § 12-504c provides: "The provisions of section 12-504a shall not be applicable to the following: (a) Transfers of land resulting from eminent domain proceedings; (b) mortgage deeds; (c) deeds to or by the United States of America, state of Connecticut or any political subdivision or agency thereof; (d) strawman deeds and deeds which correct, modify, supplement or confirm a deed previously recorded; (e) deeds between husband and wife and parent and child when no consideration is received, except that a subsequent nonexempt transfer by the grantee in such cases shall be subject to the provisions of section 12-504a as it would be if the grantor were making such nonexempt transfer; (f) tax deeds; (g) deeds releasing any property which is a security for a debt or other obligation; (h) deeds of partition; (i) deeds made pursuant to a merger of a corporation; (j) deeds made by a subsidiary corporation to its parent corporation for no consideration other than the cancellation or surrender of the capital stock of such subsidiary; (k) property transferred as a result of death by devise or otherwise and in such transfer the date of acquisition or classification of the land for purposes of sections 12-504a to 12-504f, inclusive, whichever is earlier, shall be the date of acquisition or classification by the decedent; (l) deeds to any corporation, trust or other entity, of land to be held in perpetuity for educational, scientific, aesthetic or other equivalent passive uses, provided such corporation, trust or other entity has received a determi-

believed that the transfer initiated a new ten year hold-ing period for purposes of § 12-504a (b).[8]

In February, 1996, the plaintiff sold the property to Jan's Construction Company for $1,500,000. At that time, pursuant to § 12-504a (b) (5), the defendant imposed a conveyance tax in the amount of $58,056, representing 6 percent of the sale price. The plaintiff paid the tax under protest. The defendant subsequently discovered that the tax assessor incorrectly had deter-mined that the plaintiff's acquisition date had been October 1, 1991—the date as of which the department of forestry had changed the name of the title holder on the classification certification—rather than December 21, 1990—the date that the property was transferred to the plaintiff. Accordingly, it determined that, pursuant to § 12-504a (b) (6), the correct tax rate on the convey-ance to Jan's Construction Company should have been

[8] nation from the Internal Revenue Service that contributions to it are deduct-ible under applicable sections of the Internal Revenue Code; (m) land subject to a covenant specifically set forth in the deed transferring title to such land, which covenant is enforceable by the town in which such land is located, to refrain from selling or developing such land in a manner inconsis-tent with its classification as farm land pursuant to section 12-107c, forest land pursuant to section 12-107d or open space land pursuant to section 12-107e for a period of not less than eight years from the date of transfer, if such covenant is violated the conveyance tax set forth in this chapter shall be applicable at the rate which would have been applicable at the date the deed containing the covenant was delivered and, in addition, the town or any taxpayer therein may commence an action to enforce such covenant; and (n) land the development rights to which have been sold to the state under chapter 422a. If such action is taken by such a taxpayer, the town shall be served as a necessary party."

[8] Although the tax assessor determined that the transfer to the plaintiff was not a transfer "as a result of death," and, therefore, that it initiated a new ten year holding period, the transfer was not subject to a conveyance tax under § 12-504a (b) because the transfer to Dorothy T. Zimany as a result of her husband's death was exempt under § 12-504c (k). Accordingly, her holding period related back to the date that the land was originally classified by her husband in 1971, and the transfer from her estate to the plaintiff was exempt from the imposition of the conveyance tax as not being within ten years of the date of acquisition.

5 percent for property sold within the sixth year of ownership, rather than the 6 percent previously assessed. The defendant also determined that, pursuant to § 12-494, a conveyance tax of $1650 should have been imposed on the transfer of the property to the plaintiff. Accordingly, the defendant forwarded a refund check in the amount of $8026 to the plaintiff, representing the difference between 6 percent and 5 percent of the sale price, less $1650. The plaintiff never negotiated the check.

On March 8, 1996, the plaintiff, citing the provisions of § 12-119, initiated this action, claiming on various grounds that the imposition of the tax was illegal. The defendant filed a motion to dismiss on the grounds that, pursuant to General Statutes § 12-504d,[9] the exclusive

[9] General Statutes § 12-504d provides: "Any person aggrieved by the imposition of a tax under the provisions of sections 12-504a to 12-504f, inclusive, may appeal therefrom as provided in sections 12-111 and 12-112."

Although it is not necessary for the resolution of this appeal, we take this opportunity to review the genealogy of § 12-504d and the statutory appeal provisions referred to in that section in order to point out a possible oversight by the legislature in amending § 12-504d that may have had an unintended result. The legislation codified as § 12-504d was enacted in 1972. See Public Acts 1972, No. 152, § 4. As originally enacted, the statute authorized appeals from the imposition of a conveyance tax "as provided in sections 12-111, 12-112 and 12-118 . . . ." Public Acts 1972, No. 152, § 4. General Statutes §§ 12-111 and 12-112 related, as they do now, to property tax assessments and § 12-111 authorized appeals by persons "aggrieved by the doings of the assessors" to the board of tax review. General Statutes (Rev. to 1972) § 12-118 authorized appeals from the decision of the board of tax review to the Court of Common Pleas. In 1987, the legislature established the Connecticut appeals board for property valuation to hear appeals from local boards of tax review. Public Acts 1987, No. 87-404, § 7. That legislation was codified as General Statutes § 12-121aa. At the same time, the legislature amended § 12-118 to authorize appeals from the appeals board to the Superior Court. Public Acts 1987, No. 87-404, § 9. In 1989, the legislature postponed the date for the appointment of the appeals board from February 1, 1989, to February 1, 1991; Public Acts 1989, No. 89-231, § 1; and authorized appeals to the Superior Court from boards of tax review for the assessment year commencing October 1, 1989. Public Acts 1989, No. 89-231, § 4. That appeal provision, as periodically amended to include additional assessment years, was codified as General Statutes § 12-117a. In 1995, the legislature repealed both §§ 12-121aa and 12-118. Public Acts 1995, No. 95-283, § 67. In 1999, the legislature

remedy available to the plaintiff was an appeal pursuant to General Statutes §§ 12-111[10] and 12-112.[11] The trial court, *Ronan, J.*, denied the motion. The defendant renewed the motion to dismiss at the time of trial and, again, the trial court, *Gormley J.*, denied it. A trial was held on June 4, 2001, and on June 27, 2001, the trial court issued its decision. The court concluded that, under *Timber Trails Associates* v. *New Fairfield*, 226 Conn. 407, 627 A.2d 932 (1993), the defendant had not been authorized to declassify the property for purposes of initiating a new ten year holding period under § 12-504a (b) at the time of the transfer to the plaintiff. The court also stated that, although it was inclined to agree with the plaintiff's claim that the transfer fell under

deleted the reference to § 12-118 in § 12-504d. Public Acts 1999, No. 99-89, § 8.

It is apparent, therefore, that the legislature originally intended that a person appealing under the provisions of § 12-504d would be authorized to appeal from a decision by the board of tax review under the provisions of § 12-118 as that statute existed in 1972. When the legislature amended § 12-504d in 1999 to delete the reference to § 12-118, which, in the interval, had been amended to provide for appeals from the board of appeals and, ultimately, repealed, it did not substitute a reference to § 12-117a, which, at the time that § 12-118 was repealed and currently, is the statute authorizing appeals from a board of tax review to the Superior Court. The legislative history of Public Acts 1999, No. 99-89, § 8, indicates that the legislature understood the deletion of the reference to § 12-118 in § 12-504d to be technical in nature. That characterization would be surprising if the legislature in fact recognized that § 12-504d no longer expressly provides for an appeal from a board of tax review as originally intended.

[10] General Statutes § 12-111 provides in relevant part: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of a lease to pay real property taxes and any person to whom title to such property has been transferred since the assessment date, claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to the board of assessment appeals. . . ."

[11] General Statutes § 12-112 provides: "No appeal from the doings of the assessors in any town shall be heard or entertained by the board of assessment appeals unless referred to it at one of its meetings during the month of September in the case of an appeal related to motor vehicle assessment or unless written appeal is made on or before February twentieth in accordance with the provisions of section 12-111."

the exception set forth at § 12-504c (k) pertaining to transfers as a result of death, it was not required to reach that claim in light of its conclusion based on *Timber Trails Associates*. Accordingly, the trial court ruled that, because, for purposes of § 12-504a (b), the date that the plaintiff "first caused such land to be . . . classified" was the date that the property originally had been classified in 1971, the land had not been sold within ten years of classification and the defendant had illegally imposed the conveyance tax. The court ordered the defendant to refund the $58,056 to the plaintiff. The trial court did not directly address the defendant's claim that $1650 was due pursuant to § 12-494,[12] but implicitly rejected the claim by ordering a full refund of the $58,056 without a setoff. The defendant appealed to the Appellate Court, and we granted the plaintiff's motion to transfer the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

The defendant claims on appeal that the trial court improperly denied its motion to dismiss for lack of jurisdiction. It also claims that the trial court improperly relied on this court's decision in *Timber Trails Associates* v. *New Fairfield,* supra, 226 Conn. 407, in support of its determination that the sale of the land by the plaintiff in 1996 was not subject to a conveyance tax pursuant to § 12-504a (b) (6) because the defendant had no authority to declassify the land. Finally, it claims that the trial court improperly rejected its claim that a conveyance tax of $1650 was due pursuant to § 12-494 on the transfer of the property to the plaintiff in 1990. With respect to the defendant's first claim, we conclude that the trial court properly determined that it had jurisdiction. With respect to the second claim, we affirm

---

[12] Although the defendant never formally filed a counterclaim or claimed a right of setoff, it argued in its trial brief that it was entitled to deduct the $1650 from the refund given to the plaintiff as a result of the assessor's miscalculation of the tax due under § 12-504a (b).

the judgment of the trial court on the alternate ground that the transfer to the plaintiff was an excepted transfer under § 12-504c (k). With respect to the third claim, we conclude that no conveyance tax was due from the plaintiff pursuant to § 12-494.

I

We first address the defendant's claim that the trial court had no jurisdiction to hear the plaintiff's claim pursuant to § 12-119 because, under § 12-504d, the exclusive remedy for a person aggrieved by the imposition of a conveyance tax pursuant to § 12-504a (b) is an appeal to the board of assessment appeals pursuant to §§ 12-111 and 12-112. We conclude that the trial court properly determined that it had jurisdiction over the claim.

"A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

We begin our analysis with a review of the relevant statutes. Section 12-504d provides that "[a]ny person aggrieved by the imposition of a tax under the provisions of sections 12-504a to 12-504f, inclusive, may appeal therefrom as provided in sections 12-111 and 12-112." Those statutes are contained in chapter 203 of the General Statutes governing property tax assessments. Section 12-111 authorizes appeals by persons "aggrieved by the doings of the assessors" to the board of assessment appeals. Section 12-112 sets forth the time limit on such appeals. In addition to the appeal authorized by § 12-111, § 12-119 provides in relevant part that "[w]hen it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . ."

The defendant claims that the collateral action[13] authorized by § 12-119 relates solely to disputes over property tax assessments and does not authorize actions arising out of conveyance tax disputes. It further contends that, because § 12-504d specifically provides for an appellate remedy pursuant to § 12-111, the plaintiff was restricted to that remedy. In support of this claim, the defendant relies on the principle that "where

---

[13] This court in *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 412, stated that § 12-119 "expressly provides that an owner may appeal to the Superior Court . . . ." We conclude, however, that the "application for relief" authorized by § 12-119 is a substitute for a common-law action in equity and, strictly speaking, is not an appeal. See *Cohn* v. *Hartford*, 130 Conn. 699, 704, 37 A.2d 237 (1944) (predecessor to § 12-119 "was clearly intended to take the place of the remedy in equity").

a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Internal quotation marks omitted.) *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, 53 Conn. App. 142, 151, 728 A.2d 1145, cert. denied, 250 Conn. 920, 738 A.2d 654 (1999).

We agree with the defendant that § 12-119 does not authorize a challenge to the imposition of a conveyance tax. Rather, the statute clearly relates to taxes "laid on property." We also recognize that § 12-504d sets forth the exclusive appellate remedy for persons aggrieved by the imposition of a conveyance tax pursuant to § 12-504a (b). This court previously has recognized, however, that when a plaintiff claims that the imposition of a conveyance tax was invalid in the first instance, as distinct from claiming that the tax was miscalculated, a collateral attack on the imposition of the tax under the common law is permissible even though § 12-504d provides an appellate remedy. See *McKinney* v. *Coventry*, 176 Conn. 613, 615, 410 A.2d 453 (1979) (recognizing that collateral challenge to imposition of conveyance tax is permissible in lieu of appeal pursuant to § 12-504d where plaintiff challenges initial validity of assessment).[14] Thus, *McKinney* recognized an exception to the principle enunciated in *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, supra, 53 Conn. App. 151, that statutory remedies are exclusive. Conse-

---

[14] In *McKinney*, this court did not frame the question as a jurisdictional one, but stated that "to prevail [in their collateral challenge], the plaintiffs must establish the invalidity of the assessment . . . ." *McKinney* v. *Coventry*, supra, 176 Conn. 615. The cases relied on by this court in *McKinney* make it clear, however, that the trial court would have no jurisdiction to hear a collateral challenge to the imposition of a tax unless the challenge was to the validity of the tax in the first instance. See *Vecchio* v. *Sewer Authority*, 176 Conn. 497, 500, 408 A.2d 254 (1979); *Vaill* v. *Sewer Commission*, 168 Conn. 514, 518–19, 362 A.2d 885 (1975).

quently, we must determine: (1) whether the trial court would have had jurisdiction to hear a collateral challenge to the defendant's imposition of the conveyance tax under *McKinney*; and (2) if so, whether the plaintiff's invocation of § 12-119 deprived the court of jurisdiction.

In *McKinney*, this court considered a collateral challenge to the imposition of a conveyance tax based on the plaintiffs' claim that the tax was unconstitutional. Specifically, the plaintiffs claimed that the portion of Public Acts 1972, No. 152 (P.A. 152), § 1, now codified with certain amendments as § 12-504a (b), providing for the imposition of a tax when classified land is sold within a period of ten years "from time of initial acquisition or classification, whichever is earlier," was so vague as to violate the due process clauses of the state and federal constitutions. *McKinney* v. *Coventry*, supra, 176 Conn. 616. In this case, the plaintiff also challenges the application of § 12-504a (b) to the sale of its property on constitutional grounds. Specifically, it claims that the defendant violated the ex post facto clause of the federal constitution and the due process clauses of both the federal and the state constitutions.[15] Moreover, as noted by the trial court, the plaintiff does not claim that the tax was improperly calculated, but claims that the defendant disregarded the provisions of § 12-504c pertaining to exempt transactions. Accordingly, we conclude that the plaintiff's claim challenges the validity of the tax in the first instance and, consequently, that the trial court would have had jurisdiction over a collateral challenge under *McKinney*.[16]

---

[15] The trial court did not reach the defendant's constitutional claims because it decided the issue on nonconstitutional grounds.

[16] Indeed, at the time the trial court, *Gormley J.*, denied the defendant's second motion to dismiss, that court stated: "I'm not even sure you had to go into § 12-119. I think you could just bring an action directly for refund of that money if a plaintiff feels that they have been aggrieved by the decision."

We now must determine whether the fact that the plaintiff proceeded under § 12-119 instead of bringing a collateral challenge under the common law deprived the trial court of jurisdiction. In *Cohn* v. *Hartford*, 130 Conn. 699, 703, 37 A.2d 237 (1944), we recognized, with respect to property tax assessments, that, under the common law, "where there was misfeasance or nonfeasance by the taxing authorities or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty," relief could be given in equity in the absence of statutory authority. We concluded, however, that the predecessor to § 12-119 "was clearly intended to take the place of the remedy in equity based on an overvaluation of the property and as all the relief can be obtained under it which could be afforded by equity, it precludes a resort to equity generally in such a case as the one before us." Id., 704; see also *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, supra, 53 Conn. App. 150 ("[i]t is well settled that § 12-119 codified the then existing common-law right and remedy of assumpsit that allowed a taxpayer to challenge an illegally assessed tax") and cases cited therein. This court also has held that "§ 12-119 generally is not a substitute for a timely appeal to a board of tax review pursuant to [General Statutes (Rev. to 1993) § 12-111][17] . . . [but] requires an allegation that something more than mere valuation is at issue." (Citations omitted; internal quotation marks omitted.) *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 413 n.9. Thus, the collateral action authorized by § 12-119 for cases involving property tax assessments where "something more than mere valuation is at issue" is the analog to the common-law collateral action recog-

---

[17] *Timber Trails Associates* made reference to Public Acts 1991, No. 91-221, § 4, now codified as General Statutes § 12-117a. *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 407 n.9. That statute, however, governs appeals from a board of tax review to the Superior Court. General Statutes (Rev. to 1993) § 12-111 governs appeals to a board of tax review.

nized in *McKinney* for cases involving the imposition of a conveyance tax where something more than the calculation of the tax is at issue, and the remedies and relief available under § 12-119 are the same as those available under the common law in a challenge to the imposition of an illegal tax.

To conclude in this case that the fact that the plaintiff invoked § 12-119 instead of bringing a common-law action in equity deprived the trial court of jurisdiction would be to exalt form over substance. Although the trial court technically did not have jurisdiction over a challenge to the imposition of a conveyance tax under § 12-119, the issues, the nature of the proceeding and the form of relief were precisely the same as they would have been had the plaintiff characterized its claim as a common-law action in equity. Accordingly, the plaintiff did not reap any procedural advantage or obtain any remedy or relief in the proceedings under § 12-119 that it would not have had had it brought a common-law action in equity under *McKinney*. Nothing would be gained by requiring the plaintiff to initiate a new proceeding that, in all respects except its characterization of the claim, would be identical to this one.[18] Accordingly, we conclude that the trial court properly determined that it had jurisdiction over the plaintiff's claim.

## II

We next consider the defendant's claim that the trial court improperly relied on this court's decision in *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 407, to conclude that the transfer of the property to the

---

[18] We note that one difference between an action under § 12-119 and an equitable action under the common law is that, under § 12-119, a plaintiff must initiate the action within one year from the date that the property was last evaluated for purposes of taxation. The only time limitation on bringing an action in equity is the doctrine of laches. Under the circumstances of this case, that doctrine would not bar the plaintiff's claim.

plaintiff in 1991 did not trigger a new holding period for purposes of assessing a conveyance tax pursuant to § 12-504a (b). The plaintiff contends, to the contrary, that the trial court properly applied *Timber Trails Associates* and also raises the following alternate grounds for affirmance:[19] (1) the transfer to the plaintiff was an exempt transfer under § 12-504c (k) relating to transfers "as a result of death by devise or otherwise"; (2) the transfer was an exempt transaction under § 12-504c (d) relating to strawman transactions; (3) the transfer from the plaintiff to Jan's Construction Company was exempt under *Timber Trails Associates* because the transfer to the plaintiff was not a sale; (4) the imposition of the tax violates the ex post facto clause of the federal constitution;[20] (5) the imposition of the tax violates the due process clause of the Connecticut constitution;[21] and (6) the imposition of the tax was an illegal retroactive application of § 12-504a (b).[22] We affirm the judg-

[19] Although the plaintiff did not expressly characterize these claims as alternate grounds for affirmance, it made the claims in its brief and the defendant had an adequate opportunity to respond. "Given the fact that neither party would be prejudiced by our doing so, we treat [these claims] as if [they] had been properly raised as . . . alternate ground[s] for affirmance. See Practice Book § 63-4." *Mannweiler* v. *LaFlamme*, 65 Conn. App. 26, 34 n.6, 781 A.2d 497 (2001).

[20] Article one, § 10, of the United States constitution provides in relevant part: "No State shall . . . pass any . . . ex post facto Law . . . ."

[21] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[22] The Appellate Court has considered the retroactivity of § 12-504a (a) in a similar case. See *Lathrop* v. *Board of Tax Review*, 18 Conn. App. 608, 559 A.2d 1160, cert. denied, 212 Conn. 812, 565 A.2d 536 (1989). It concluded that, when the original classification of the property was before the effective date of § 12-504a, and there was a subsequent transfer that otherwise would have been exempt under § 12-504c (k), to allow the exemption would be an illegal retroactive application of the statute. Id., 611–12. For the following reasons, we now overrule that case.

In *East Village Associates, Inc.* v. *Monroe*, 173 Conn. 328, 377 A.2d 1092 (1977), this court concluded that the then current version of what is now codified as § 12-504a (b) should not be applied retroactively. In that case, the land in question originally had been classified in 1971, partially as forest

ment of the trial court on the alternate ground that the

land and partially as farm land. Id., 330. At that time and in 1972, property owners were required to reapply annually for special classification on or before October 1 of the relevant year. Id., 330–31. In 1972, the legislation now codified as § 12-504a (b) was enacted. See P.A. 152. The plaintiff did not apply for classification that year, apparently to avoid the imposition of a conveyance tax pursuant to the new statute. Nevertheless, the tax assessor placed an assessor's lien on the defendant's land records, giving notice that the property was subject to a conveyance tax pursuant to § 12-504a. *East Village Associates, Inc.* v. *Monroe*, supra, 331. In April, 1973, the plaintiff conveyed a portion of its land. The town clerk refused to record the deed until the conveyance tax was paid, and the plaintiff paid under protest. Id. The plaintiff subsequently sold additional parcels, on which it also paid the conveyance tax under protest. Id. The Court of Common Pleas determined that the tax had been improperly imposed retroactively and this court affirmed that court's judgment. We rejected the defendant's argument that the application was not retroactive because the sale had been after the effective date of the statute, concluding that "both classification and sale must occur after the effective date of that section to have the tax operate prospectively." Id., 333. We reasoned that a 1974 amendment providing that land once classified "shall remain so classified without the filing of any new application subsequent to such classification"; see Public Acts 1974, No. 74-343, § 6, now codified as General Statutes § 12-504h; revealed "a legislative intent to have the tax apply only to landowners who classified their land with at least constructive notice of the consequence of such action." *East Village Associates, Inc.* v. *Monroe*, supra, 332.

The plaintiff in *Lathrop* v. *Board of Tax Review*, supra, 18 Conn. App. 608, had inherited certain land from her husband. At the time of his death on September 10, 1982, the land was classified as open space and had been so classified for more than ten years. Id., 609–10. The opinion does not state the specific date on which the land was originally classified, but it was before the effective date of P.A. 152. See id., 613 n.4. On October 24, 1983, the plaintiff had the land classified as open space. Id., 610. We assume that the plaintiff applied for reclassification for the sole purpose of recording the change in title. The plaintiff sold a portion of the property on September 17, 1986, and the assessor imposed a conveyance tax pursuant to the then current version of § 12-504a (a), which the plaintiff paid under protest. Id., 610–11. The plaintiff then appealed to the defendant board of tax review. The board denied relief, and the plaintiff appealed to the Superior Court. The trial court granted the defendant's motion for summary judgment ruling that "a 'new [open space land] classification was begun in [the plaintiff's] name on October 24, 1983,' " and, therefore, that she could not " 'utilize [the provisions of] General Statutes § 12-504c (k) to "tack" onto the time period during which her husband held the land as open space.' " Id., 611. The Appellate Court affirmed the trial court's judgment, reasoning that, under *East Village Associates, Inc.* v. *Monroe*, supra, 173 Conn. 328, "[b]ecause

transfer of the property to the plaintiff was exempt under § 12-504c (k).

The question of whether the transfer of classified land under the undisputed factual circumstances of this case initiated a new ten year holding period for purposes of § 12-504a (b) is a question of statutory interpre-

the conveyance tax . . . did not apply to land transferred as a result of the death of a record owner who had classified the land as open space prior to the effective date of the statute [because such an application would be illegally retroactive] . . . the statutory exceptions to that tax statute also had no application to the transfer by which the plaintiff received the land." (Citation omitted.) *Lathrop* v. *Board of Tax Review,* supra, 613 n.4. Accordingly, the plaintiff's inheritance of the land under her husband's will was not an exempt transaction under § 12-504c (k), allowing her to use the original date of classification as her date of acquisition. Id. The Appellate Court also concluded that, because the plaintiff had applied for classification in 1983, § 12-504a applied to the sale of the land in 1986 and § 12-504c (k) did not apply to that sale because it was not a transfer "as a result of death . . . ." Id., 614. Accordingly, the court concluded that the tax properly had been assessed.

We conclude that the Appellate Court in *Lathrop* misconstrued our holding in *East Village Associates, Inc.* In *East Village Associates, Inc.,* we concluded that the land in question had not been specially classified at the time that the conveyance tax was imposed. Rather, the defendant had imposed the conveyance tax on the basis of a classification that the plaintiff deliberately had allowed to lapse under the pre-1974 version of the statutes in order to avoid the tax, notice of which it had not had at the time that it originally applied for classification of the property. In *Lathrop,* on the other hand, the property apparently had been continuously classified from the date of the initial classification up to the time that the plaintiff sold the property in 1983. Because classification was required to be applied for annually up to the time of the 1974 legislation now codified as § 12-504h; see General Statutes §§ 12-107c, 12-107d and 12-107e; it is clear that the decedent in *Lathrop* had chosen to continue to classify the property after the effective date of § 12-504a with full knowledge of the tax consequences of that statute. Accordingly, we conclude that the Appellate Court improperly determined that the application of § 12-504a, and the exemption from the application of that statute set forth in § 12-504c (k), to the plaintiff's inheritance of the property would have been retroactive in that case merely because the initial classification of the property was prior to the effective date of § 12-504a.

For purposes of retroactivity analysis, this case is factually indistinguishable from *Lathrop.* We conclude, therefore, that the application of § 12-504a et seq. to the transactions at issue in this case is not retroactive.

tation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same subject matter." (Citation omitted; internal quotation marks omitted.) *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 512, 767 A.2d 692 (2001).

In *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 410, the defendant towns claimed that the transfer of a property by a corporation to its sole stockholder for no consideration had terminated the property's classification as forest land pursuant to General Statutes § 12-504h.[23] Accordingly, the defendants' assessors assessed a property tax on the land based on its fair market value rather than its current use value. Id. The plaintiff property owner challenged the imposition of the tax pursuant to § 12-119, and the trial court sustained the appeals, concluding that the defendants did not have the authority to declassify the land. Id., 410–11. The defendants then appealed to this court. Id., 411. We concluded that, because the property in that case had been transferred for no consideration, it had not

---

[23] General Statutes § 12-504h provides: "Any land which has been classified by the record owner as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e shall remain so classified without the filing of any new application subsequent to such classification, notwithstanding the provisions of said sections 12-107c, 12-107d and 12-107e, until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) such land is sold by said record owner."

been " 'sold by [the] record owner' as required by § 12-504h (2)." Id., 414. Accordingly, we concluded that the transfer of the property for no consideration did not terminate its classification as forest land pursuant to that statute. Id.

We also rejected the defendants' argument that the land had been declassified for purposes of § 12-504a (b) pursuant to § 12-504b,[24] which provides in relevant part that "[u]pon the recording of [a deed conveying a property subject to a conveyance tax under § 12-504a] and the payment of the required conveyance tax such land shall be automatically declassified," because the land had been classified for more than ten years prior to the transfer and, therefore, the transfer had not been subject to a conveyance tax. Id., 415. Finally, we noted that the provision of General Statutes § 12-504f[25] that

---

[24] General Statutes § 12-504b provides: "Said conveyance tax shall be due and payable by the particular grantor who caused such classification to be made to the town clerk of the town in which the property is entered upon the tax list at the time of the recording of his deed or other instrument of conveyance. Such conveyance tax and the revenues produced thereby shall become part of the general revenue of such municipality. No deed or other instrument of conveyance which is subject to tax under sections 12-504a to 12-504f, inclusive, shall be recorded by any town clerk unless the tax imposed by said sections has been paid. Upon the recording of such deed and the payment of the required conveyance tax such land shall be automatically declassified and the assessor shall forthwith record with the town clerk a certificate setting forth that such land has been declassified. Thereafter, such land shall be assessed at its fair market value as determined by the assessor under the provisions of section 12-63 for all other property, until such time as a record owner may reclassify such land."

[25] General Statutes § 12-504f provides: "The tax assessor shall file annually, not later than sixty days after the assessment date, with the town clerk a certificate for any land which has been classified as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e, which certificate shall set forth the date of the initial classification and the obligation to pay the conveyance tax imposed by this chapter. Said certificate shall be recorded in the land records of such town. Any such classification of land shall be deemed personal to the particular owner who requests such classification and shall not run with the land."

"classification of land shall be deemed personal to the particular owner who requests such classification and shall not run with the land" related solely to "the issuance and recording of certificates identifying property as forest land for the purpose of the 'obligation to pay the conveyance tax imposed by this chapter.' " Id., 417. Because there was no "obligation to pay the conveyance tax"; General Statutes § 12-504f; the land was not declassified under that statute. Thus, in *Timber Trails Associates*, this court held that a conveyance declassifies a property only if: (1) the conveyance is subject to a conveyance tax pursuant to § 12-504a; or (2) the conveyance is a sale or the use is changed pursuant to § 12-504h.

Relying on *Timber Trails Associates*, the trial court in this case concluded that the imposition of the conveyance tax on the sale by the plaintiff to Jan's Construction Company was illegal because the defendant "had no authority to declassify [the property at the time of the transfer to the plaintiff] for the purpose of creating a new ten year recapture period." The court concluded that the defendant lacked such authority because: (1) the property had been held for more than ten years before the conveyance to the plaintiff and, therefore, no conveyance tax was due; and (2) the property had not been sold to the plaintiff.

The defendant argues that *Timber Trails Associates* is irrelevant to this case because that case merely held that when a conveyance of classified land is not subject to a conveyance tax, the property is not declassified pursuant to § 12-504b or § 12-504f for property tax purposes. The defendant maintains that *Timber Trails Associates* did not address the question of whether such a transfer would initiate a new holding period for purposes of § 12-504a (b). We disagree. This court specifically held in *Timber Trails Associates* that "the recording of the deed and payment of the conveyance

tax triggers the automatic declassification of the land pursuant to § 12-504b"; *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 415; and that, in the absence of that triggering event, classification is continuous. We also held that property is not declassified pursuant to § 12-504f unless a conveyance tax is due. Id., 417. To accept the defendant's argument that *Timber Trails Associates* is inapplicable would require us to conclude that the property in this case was declassified at the time of transfer to the plaintiff for purposes of imposing a conveyance tax on the subsequent sale pursuant to § 12-504a (b), but was continuously classified for property tax purposes. Nothing in *Timber Trails Associates*, the statutes or their legislative history, however, supports the view that property may be declassified for one purpose while continuously classified for another purpose.

Having concluded that the trial court properly applied *Timber Trails Associates*, however, we are compelled to acknowledge that our decision in that case is difficult to reconcile with our determination in *McKinney* v. *Coventry*, supra, 176 Conn. 613, that "tacking" of successive periods of ownership is not permissible. In *McKinney*, the plaintiff property owners, on March 13, 1971, purchased land that had been classified annually as farm land by the previous owner in 1968, 1969 and 1970. The plaintiffs renewed the classification in 1971. In 1972, the legislature passed P.A. 152, codified in part and as amended as § 12-504a (b). In 1972, the plaintiffs renewed the classification of the land. On December 28, 1972, they sold the land, and the defendant imposed a conveyance tax of 9 percent on the basis of its determination that the plaintiffs had sold the land during their second year of ownership. Id., 615 n.2. As previously noted in this opinion, the plaintiffs challenged the tax in a collateral action, claiming that provision of P.A. 152, § 1, now codified as amended as § 12-504a (b), imposing a tax when classified farm land is sold "within a period of ten years from time of initial acquisition or

classification, whichever is earlier," was unconstitutionally vague. Id., 616.

This court concluded that the statute was sufficiently clear to give notice that " 'tacking' of successive periods of ownership was not authorized under its provisions . . . ." Id., 621. This court further concluded that, when the legislature amended P.A. 152, § 1, to provide that a conveyance tax would be imposed if the land were sold within ten years of the "time [the record owner] acquired title to such land or from the time he first caused such land to be so classified," instead of within ten years of the "time of initial acquisition or classification"; see Public Acts 1974, No. 74-343 (P.A. 74-343), § 1; it "removed any possible doubt as to whether 'tacking' of successive periods of ownership was permitted in determining conveyance tax liability." *McKinney* v. *Coventry*, supra, 176 Conn. 621 n.4, citing the portion of P.A. 74-343 amending § 12-504a. Thus, under *McKinney*, a property is declassified at the time that it is "acquired" by the record owner, regardless of whether the transaction in which it is acquired is subject to a conveyance tax or constitutes a "sale."

The inconsistency between our decision in *McKinney* and our decision in *Timber Trails Associates* reflects inconsistencies within the statutes themselves. See General Statutes § 12-504a (suggesting that property is declassified when it is "acquired"); General Statutes § 12-504b (suggesting that property is declassified when deed subject to conveyance tax is recorded); General Statutes § 12-504c (e) and (k) (providing sole exceptions to provision of § 12-504a that property is declassified at time acquired by record owner); General Statutes § 12-504f (providing that classification does not run with land for purposes of obligation to pay conveyance tax); General Statutes § 12-504h (suggesting that land is declassified only when use is changed or land is

"sold").[26] If *McKinney* was decided correctly, and, as suggested by § 12-504a, land is declassified at the time it is acquired, then the provision of § 12-504b that "such land shall be automatically declassified" upon the recording of a deed indicating the payment of a conveyance tax would be superfluous. Moreover, if any conveyance declassifies property, as suggested by the last sentence of § 12-504f, then the filing of a strawman deed, although exempted from the imposition of a conveyance tax under § 12-504c (d), would declassify the land and subject a subsequent sale within ten years of the deed to a conveyance tax. This seems a harsh and bizarre result. On the other hand, if *Timber Trails Asso-*

---

[26] The legislative history of the statutes provides little guidance on how to reconcile them. The statutes originally were enacted in 1972 to remedy a situation in which property owners were taking advantage of the lower property valuation for classified land for property tax purposes, at the expense of the towns, and then selling the land at a huge profit. See P.A. 152; 15 H.R. Proc., Pt. 4, 1972 Sess., p. 1501, remarks of Representative James J. Clynes. The legislature subsequently became concerned, however, that towns were imposing the penalty tax not only on transfers of land by the owners who initially had classified the land, but also on transfers by subsequent owners within ten years of the original date of classification. 17 H.R. Proc., Pt. 11, 1974 Sess., pp. 5176–77, remarks of Representative Herbert V. Camp. Accordingly, in 1974, the legislature enacted P.A. 74-343, which amended § 12-504a to provide that the ten year holding period would run from the date that the *record owner* acquired or classified the property, whichever was earlier; amended § 12-504b to provide that the property would be automatically declassified upon the recording of a deed subject to a conveyance tax; and amended § 12-504f to provide that the classification would be personal to the owner and not run with the land. At the same time, the legislature enacted the legislation now codified as § 12-504h in order to allow a property owner who wishes to classify property to apply for classification only once rather than annually, as some towns had required. P.A. 74-343, § 6; 17 H.R. Proc., Pt. 11, 1974 Sess., p. 5179, remarks of Representative Gordon M. Vaill. This legislative history does not answer the question of whether a property should be (1) declassified whenever there is a new record owner, thus providing the new owner with a choice either to classify the property, reap the benefit of the lower property tax valuation, and potentially be liable for a conveyance tax or to maintain the property's unclassified status; or (2) declassified only when a conveyance tax is paid or the land is sold, and otherwise automatically providing the new owner with the benefit of the prior owner's holding period.

*ciates* is correct, and, as suggested by § 12-504b, a conveyance does not declassify land unless a conveyance tax is due or, as suggested by § 12-504h, the land is sold or the use changed, then the provisions of § 12-504c (e) and (k) relating the record owner's date of acquisition back to the previous owner's date of acquisition would be superfluous. In light of these inconsistencies, it may be that the legislature itself should revisit these statutes and clarify its intention.

We need not decide in this case whether our decisions in *McKinney* and *Timber Trails Associates* are reconcilable or should be overruled, however, because, for the following reasons, we agree with the plaintiff's claim that the transfer of title by the executors of the estate of Dorothy T. Zimany to the plaintiff was an exempt transaction under the provisions of § 12-504c (k) pertaining to "property transferred as a result of death by devise or otherwise . . . ."

Under General Statutes § 45a-233 (c), a testator is authorized to incorporate into his will the fiduciary powers set forth in General Statutes § 45a-234. Those powers include the power of an executor to "transfer and convey the [estate] property or any interest therein, in fee simple absolute or otherwise . . . ." General Statutes § 45a-234 (2).[27] "[W]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 664, 680 A.2d 242 (1996). Consequently, we presume that, when the legislature enacted § 12-504c (k) in 1972, it was aware that, as a result of the death of

---

[27] General Statutes § 45a-234 provides in relevant part: "The following powers may be incorporated by reference as provided in sections 45a-233 and 45a-236 . . . .

"(2) . . . [T]o transfer and convey the property or any interest therein, in fee simple absolute or otherwise free of all trusts. . . ."

a testator, an executor could be granted power under the testator's will to transfer estate property to another entity on behalf of the estate.[28] Accordingly, we conclude that the legislature contemplated that such a transfer would be excepted from § 12-504a (b) as being a transfer "as a result of death by devise or otherwise . . . ." To conclude otherwise merely because a transfer by an executor is not an immediate and automatic result of a death itself, but, rather, results from the exercise of a power to act on behalf of the estate vesting as a result of the death, would be to put too fine a point on § 12-504c (k).[29]

In this case, Dorothy T. Zimany's will provided that her executors, Richard T. Zimany and Alexandra T. Zimany, had, "in addition to the powers given to them by the Estates, Powers and Trusts Law of the State of Connecticut," the power to "sell, lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of, or grant options with respect to any or all property

---

[28] We note that "[u]pon the death of the owner of real estate, neither the executor nor the administrator holds title. *Ryder* v. *Lyon*, 85 Conn. 245, 252, 82 A. 573 (1912). Title immediately descends to the heirs or devisees of real estate, subject to the right of administration. *O'Connor* v. *Chiascione*, 130 Conn. 304, 33 A.2d 336 (1943)." (Internal quotation marks omitted.) *Gallant* v. *Cavallaro*, 50 Conn. App. 132, 137, 717 A.2d 283, cert. denied, 247 Conn. 936, 722 A.2d 1216 (1998), cert. denied, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). It has been held, however, that "when an administrator takes possession of his or her decedent's real estate such possession relates back to the time of decedent's death." 34 C.J.S. 110, Executors and Administrators § 282 (1998). Accordingly, in such a case the devisees are deemed never to have taken title and, consequently, an executor exercising his power to transfer property does not transfer the title from the devisees, but from the estate.

[29] The defendant argues, to the contrary, that the phrase "transferred as a result of death by devise or otherwise" in § 12-504c (k) refers exclusively to transfers by: (1) certificate of devise when the transfer is by will; (2) certificate of descent when the decedent dies intestate; or (3) right of survivorship when a joint tenant dies. In the defendant's view, the statute does not cover a transfer of estate property by the executors of the estate to a corporate entity. The defendant cites no legislative history or other authority, however, in support of its interpretation.

at any time forming a part of [her] Estate or any trust estate in any manner, at any time or times, for any purposes, for any prices and upon any terms, credits, and conditions . . . ." The executors exercised that power to transfer the property from the estate of Dorothy T. Zimany to the plaintiff by executor's deed. The defendant does not claim that that transfer was improper or should be voided, but claims, as a general matter, that such transfers do not fall under § 12-504c (k). We have concluded, however, that they do.

Accordingly, because the plaintiff's acquisition of the classified land fell under § 12-504c (k), the date of the acquisition was, for purposes of § 12-504a (b), the date that Dorothy T. Zimany acquired the land. See General Statutes § 12-504c (k) ("in such transfer the date of acquisition or classification of the land for purposes of sections 12-504a to 12-504f, inclusive, whichever is earlier, shall be the date of acquisition or classification by the decedent"). Because Dorothy T. Zimany also acquired the land in a transfer subject to § 12-504c (k), the date of her acquisition related back to the date that Alexander Zimany classified the land in 1971. Accordingly, the sale by the plaintiff to Jan's Construction Company in February, 1996, was not "within a period of ten years from the time [it] acquired title to [the] land," and the transfer was not subject to the imposition of a conveyance tax under § 12-504a (b).

### III

We next address the defendant's claim that, pursuant to § 12-494, a conveyance tax of $1650 was due on the conveyance of the property to the plaintiff in 1990. The defendant, citing the Superior Court's decision in *Bjurback* v. *Commissioner of Revenue Services*, 44 Conn. Sup. 354, 690 A.2d 902 (1996), argues that a transfer of property from an estate to a corporation, the sole shareholders of which are the transferors, is a transfer

for consideration regardless of whether a price is paid. We reject this claim.

Even if we were to assume that this claim properly had been preserved; see footnote 12 of this opinion; General Statutes § 12-495 provides in relevant part that "[t]he tax imposed by this chapter shall be payable by the person conveying the property upon the recording of each such deed, instrument or writing. . . ." Accordingly, if any conveyance tax had been due, it would have been properly payable not by the plaintiff, but by the executors of the estate of Dorothy T. Zimany, who are not parties to this case.

The judgment is affirmed.

In this opinion the other justices concurred.