## SUSAN COYLE, EXECUTRIX (ESTATE OF VERMONT O. BLAKEMAN) *v.* COMMISSIONER OF REVENUE SERVICES
### (AC 34260)

DiPentima, C. J., and Robinson and Espinosa, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 26, 2012—officially released April 30, 2013

*Stephen Bellis,* for the appellant (plaintiff).

*Dinah J. Bee,* assistant attorney general, with whom were *Louis P. Bucari,* assistant attorney general, and, on the brief, *George Jepsen,* attorney general, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, Susan Coyle, executrix of the estate of Vermont O. Blakeman (decedent), appeals from the judgment of the trial court dismissing her declaratory judgment action against the defendant, the commissioner of revenue services, for lack of subject matter jurisdiction because she failed to exhaust her administrative remedies. On appeal, she claims that the court erred in (1) finding that the plaintiff was required to exhaust administrative remedies and (2) determining that an administrative appeal, rather than a declaratory

judgment action, was the correct means to obtain relief. We affirm the judgment of the trial court.[1]

The following legislative history, procedural history and relevant facts as alleged in the operative complaint and set forth by the court in its memorandum of decision are relevant to this appeal. On May 3, 2011, the legislature passed Public Acts 2011, No. 11-6 (P.A. 11-6). Section 84 of P.A. 11-6 amended General Statutes § 12-391 (g) for the estates of decedents dying on or after January 1, 2011, by lowering the estate tax threshold from $3.5 million to $2 million, and taxing estates valued between $2 million and $3.6 million at 7.2 percent. It became effective upon passage, on May 4, 2011.

The plaintiff filed a complaint on June 20, 2011, in which she alleged that the decedent died on April 23, 2011, as a resident of Connecticut. At the time of his death, the decedent's taxable estate was in excess of $3.5 million. On May 17, 2011, the plaintiff was appointed as the executrix of the decedent's estate. The plaintiff additionally alleged that the retroactive portion of P.A. 11-6, § 84, was a violation of General Statutes § 55-3,[2] the fifth and fourteenth amendments to the United States constitution and article first, § 11, of the constitution of Connecticut. She sought a declaratory judgment that the retroactive applicability of § 12-391 amounted to an unconstitutional taking of the plaintiff's property.

The defendant filed a motion to dismiss for lack of subject matter jurisdiction arguing, in relevant part, that

[1] Because we affirm the judgment of the trial court on the ground that the plaintiff was required to exhaust her administrative remedies, we decline to reach the plaintiff's second claim that a declaratory judgment was the appropriate means to obtain relief.

[2] General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

the plaintiff had failed to exhaust her administrative remedies. The court found that there were administrative remedies available to the plaintiff, that she had failed to avail herself of them, and that the futility exception to the exhaustion of administrative remedies doctrine did not apply. Accordingly, it rendered judgment in favor of the defendant. This appeal followed.

The plaintiff claims that the court erred in finding that she had failed to exhaust her administrative remedies for two reasons. First, she argues that the court's ruling was improper because there are no administrative remedies to exhaust. She maintains that General Statutes § 12-395, which incorporates by reference the tax appeal procedures found at General Statutes §§ 12-548 and 12-550 to 12-554, does not apply to her because § 12-395 only concerns appeals of domicile determinations, and domicile is not contested in this case. Alternatively, the plaintiff maintains that the futility exception to the exhaustion requirement applies because she raised a constitutional challenge that could not be addressed by the defendant, and the defendant could not offer the relief that she sought. We disagree with both contentions.

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which

are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 413, 35 A.3d 188 (2012).

I

To address the plaintiff's first claim, that § 12-395 does not apply to her because it only concerns appeals of domicile determinations, we must examine the statutory language of that provision. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847, 937 A.2d 39 (2008).

"When construing a statute, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . We presume that the legislature did not intend to enact meaningless provisions. . . .

[S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 159–60, 49 A.3d 962 (2012).

"Although the title of a statute provides some evidence of its meaning, the title is not determinative of its meaning. . . . Our Supreme Court has stated that boldface catchlines in the titles of statutes, are intended to be informal brief descriptions of the contents of the [statutory] sections. . . . These boldface descriptions should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections." (Citations omitted; internal quotation marks omitted.) *Snowdon* v. *Grillo*, 114 Conn. App. 131, 136–37, 968 A.2d 984 (2009). Moreover, the title of a statute "cannot trump an interpretation that is based on an analysis of the statutory . . . language and purpose." *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 75, 52 A.3d 636 (2012).

Chapter 217 of the General Statutes, §§ 12-391 through 12-398, concerns the estate tax. Section 12-395, entitled "Appeal of determination of domicile," provides in relevant part: "(a) (1) The provisions of sections 12-548 and 12-550 to 12-554, inclusive, shall apply to the provisions of this chapter in the same manner and with the same force and effect as if the language of said sections 12-548 and 12-550 to 12-554, inclusive, had been incorporated in full into this chapter and had expressly referred to the tax imposed under this chapter, except to the extent that any such provision is inconsistent with a provision of this chapter."[3] Section

---

[3] General Statutes § 12-548 concerns the authority of the defendant to impose a deficiency assessment. General Statutes § 12-550 details how a party can file for refund of taxes paid if she believes that she has overpaid the tax. General Statutes §§ 12-553 and 12-554 detail the administrative and Superior Court appeals process, respectively. Specifically, § 12-554 provides

12-395 (b) details the manner in which an aggrieved party can appeal the determination of domicile by the defendant.[4] Specifically, it requires an aggrieved party to appeal domicile determinations to the Probate Court, rather than the Superior Court. See General Statutes § 12-395 (b).

When looking at the provision as a whole, and in conjunction with the incorporated sections under §12-395 (a) (1), the clear and unambiguous intent of the

in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the [c]ommissioner of [r]evenue [s]ervices under the provisions of this chapter may . . . take an appeal therefrom to the superior court . . . ."

[4] General Statutes § 12-395 (b) provides that "[a]ny person aggrieved by any determination of domicile by the Commissioner of Revenue Services under the provisions of subdivision (5) of subsection (h) of section 12-391 may, not later than one month after service upon the person of notice of such determination, make a written application for a hearing to the court of probate for the district within which the decedent resided at the date of his death, or within which the commissioner contends that the decedent resided at the date of his death or, if the decedent died a nonresident of this state, in the court of probate for the district within which real estate or tangible personal property of the decedent is situated, or within which the commissioner contends that real estate or tangible personal property of the decedent is situated. Such application shall set forth in detail the objection to the determination of said commissioner and a copy of same shall be mailed to said commissioner at the time of filing. The court of probate shall assign a time and place for a hearing upon such application not less than two nor more than four weeks after receipt thereof and shall cause a copy of the order of hearing to be sent to said commissioner and to the person aggrieved by said determination at least ten days before the time of such hearing. The commissioner or any person interested may appear before the court at such hearing and be heard on any matter involved in the determination. At such hearing, the court shall determine all matters properly before it, and shall enter upon its records a decree of domicile. A copy of the decree of the court of probate shall be forwarded by the judge or clerk of such court to the commissioner and to the person aggrieved because of such determination of the commissioner. The determination by the Commissioner of Revenue Services shall be conclusive upon the state and any person aggrieved by any determination of the commissioner unless a hearing is held as provided in this subsection, in which case the decree of the court of probate shall be conclusive upon the state and any person aggrieved by such determination of the commissioner unless an appeal is taken as provided for appeals from other decrees and orders of such court."

legislature was to provide an aggrieved party administrative remedies to appeal determinations of domicile as well as the amount of a levied estate tax. Although the title of the statute only refers to appeals of domicile determinations, the statutory language found at subsection (a) (1) provides that the administrative remedies and appeal procedures found in §§ 12-248 and 12-550 through 12-554 "shall apply to the provisions of this chapter in the same manner and with the same force and effect as if the language of said sections 12-548 and 12-550 to 12-554, inclusive, had been incorporated in full into this chapter and had expressly referred to the tax imposed under this chapter . . . ." General Statutes § 12-395 (a) (1). Although § 12-395 does not expressly name the estate tax, that provision is found in chapter 217, which chapter does concern the estate tax. Accordingly, we conclude that § 12-395 does not limit the administrative remedies to appeals of determinations of domicile, but applies to appeals of the estate tax in general.

## II

We next turn to the plaintiff's claim that she was not required to exhaust her administrative remedies because it would be futile for her to have done so. The plaintiff maintains that because the sole issue presented is a constitutional question, the defendant does not have the authority to grant her relief and could not do so under any of the administrative remedies advanced by him. The defendant argues that because he has the authority to assess the estate tax under §§ 12-392 (5) and (6) and 12-548, the outcome of the prescribed administrative remedies could produce the relief sought by the plaintiff, namely, not to be taxed at the higher tax rate. Moreover, he maintains that three administrative remedies exist that could possibly grant the plaintiff the relief that she seeks. We agree with the defendant.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . If the available administrative procedure . . . provide[s] the plaintiffs with a mechanism for attaining the remedy that they seek . . . they must exhaust that remedy. . . . The plaintiff's preference for a particular remedy does not determine the adequacy of that remedy. [A]n administrative remedy, in order to be adequate, need not comport with the [plaintiff's] opinion of what a perfect remedy would be." (Citations omitted; internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 100–101, 809 A.2d 492 (2002).

"A primary purpose of the doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities. . . .

"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . [W]e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when

recourse to the administrative remedy would be futile or inadequate. . . .

"It is well established that a plaintiff may not circumvent the requirement to exhaust available administrative remedies merely by asserting a constitutional claim. . . . As this court has stated on several occasions, [s]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. . . . [D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore. . . . [W]e continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy. . . .

"Limiting the judicial bypass of colorable constitutional claims to those instances of demonstrable futility is consistent with our duty to eschew unnecessarily deciding constitutional questions . . . . Pursuant to that duty, we must limit circumvention of administrative proceedings to instances in which those proceedings would be futile because no adequate administrative remedy exists. Moreover, the mere assertion in an administrative proceeding of a constitutional challenge to a statute or agency procedure does not automatically satisfy the futility exception to the exhaustion doctrine. To determine whether a party properly may seek court intervention prior to the completion of administrative proceedings, we examine whether the court has been asked to address issues entrusted to the [commissioner] and whether the [commissioner] could issue appropriate relief." (Citations omitted; internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 812–14, 12 A.3d 852 (2011).

As to the first question, the issue before the court was whether the retroactive applicability of the changes

in the estate tax under § 12-391 represented an unconstitutional taking. Our case law is clear that "adjudication of the constitutionality of legislative enactments is beyond the jurisdiction of administrative agencies." *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003); see also *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 344, 464 A.2d 785 (1983) (noting that when "the constitutional challenge . . . addresses the constitutionality of a statute, not with respect to its application but on its face . . . [t]he legislature cannot confer upon an administrative agency the power to adjudicate facial unconstitutionality without doing violence to the separation of powers doctrine"), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). Thus, the defendant cannot address the constitutional question as raised by the plaintiff in an administrative appeal, and the court was not asked to address an issue entrusted to the defendant.

We next turn to the question of whether the defendant could have granted appropriate relief. The defendant maintains that there were three ways in which the plaintiff could have obtained the relief that she sought, namely, an exemption of the payment of estate taxes on the decedent's estate between $2 million and $3.5 million. Under the first two methods, the plaintiff could have paid the tax and sought a refund pursuant to § 12-550 or refused to pay the tax and allowed the defendant to impose a deficiency assessment pursuant to § 12-548. With either scenario, the plaintiff then could have appealed to the defendant, and then to the Superior Court, pursuant to §§ 12-553 and 12-554. Under the third method, the plaintiff could have petitioned the defendant for a declaratory ruling pursuant to General Statutes § 4-176. After the resolution of the petition, the plaintiff then could have brought a declaratory judgment action in the Superior Court. See General Statutes § 4-175.

Where there is a statutory grant of authority that would allow an agency to award the relief sought with-

out deciding a constitutional question, the futility exception will not apply, and a plaintiff will be required to exhaust her administrative remedies. See *Owner-Operators Independent Drivers Assn. of America* v. *State*, 209 Conn. 679, 688–89, 553 A.2d 1104 (1989); *Doe* v. *Heintz*, 204 Conn. 17, 31–36, 526 A.2d 1318 (1987); *Sullivan* v. *State*, 189 Conn. 550, 553–59, 457 A.2d 304 (1983). If, however, the only way to determine whether a plaintiff can obtain the relief that she seeks is through a resolution of the constitutional challenge, she need not exhaust her administrative remedies and the court does have jurisdiction to hear the claim. See *St. Paul Travelers Cos.* v. *Kuehl*, supra, 299 Conn. 814–16.

Our Supreme Court, in *Owner-Operators Independent Drivers Assn. of America* v. *State*, supra, 209 Conn. 680 (*Owner-Operators*), addressed whether the plaintiffs were required to exhaust their administrative remedies before bringing an independent Superior Court action to challenge the constitutionality of a statute that governed one of the defendants, the commissioner of revenue services (commissioner). In that case, General Statutes § 12-487 required truck owners whose trucks were not registered in Connecticut to pay an annual tax for a fuel identification decal and prohibited the operation of any truck not bearing the decal. Id., 682. Trucks registered in Connecticut did not need the decal and did not have to pay the tax. Id. The plaintiffs, an association of members who owned and operated trucks that travelled in and through Connecticut, a certified motor common carrier of property, and an unincorporated motor carrier, had paid the tax for a number of years. Id. In 1987, the plaintiffs sent a letter to the commissioner objecting to the statute and stating that they intended to seek declaratory and injunctive relief and refunds of the taxes that they had paid. Id., 683. They expressed doubt that the commissioner could provide them with a refund, but provided him with information should he be able to authorize refunds. Id. They

also attached a copy of the complaint that they intended to file. Id. The commissioner did not respond. Id.

The plaintiffs in *Owner-Operators* subsequently initiated a Superior Court action claiming that the commissioner's actions violated the Commerce Clause and the Privileges and Immunities Clause of the United States constitution and 42 U.S.C. § 1983. Id. They sought declaratory and injunctive relief as well as refunds of all decal taxes paid. Id. The commissioner filed a motion to dismiss on the ground of sovereign immunity and the court heard oral argument. Id. Prior to the issuance of the court's memorandum of decision, the commissioner informed the court that the department of revenue services would stop collecting the tax because the attorney general had informed the department of revenue services that the statute was unconstitutional. Id. Given that the constitutional issues had been resolved, the court determined that the claims for injunctive relief were moot and granted the motion to dismiss on the plaintiffs' refund claims, holding that it did not have subject matter jurisdiction. Id., 684. The plaintiffs appealed. Id.

The issue before our Supreme Court in *Owner-Operators* was, when a statute requires exhaustion of administrative remedies before the state can be found to have waived sovereign immunity, whether the plaintiffs were required to exhaust their administrative remedies since their basis for challenging the statute was its constitutionality. Id., 684–90. The court agreed with the plaintiffs that General Statutes § 12-480 (c) did waive sovereign immunity for refund cases in which motor carriers disputed the legality of the decal tax under § 12-487; id., 685; but the court also noted that the "limited waiver of immunity [was] expressly conditioned on pursuit of a prescribed administrative remedy. The very section that authorize[d] a refund claim against the state itself designate[d] the commissioner of revenue services as the person to adjudicate any timely claim, in writing, that payment of the fee 'pursuant to Section 12-487 . . .

is illegal for any reason . . . .' General Statutes § 12-480 (c)." *Owner-Operators Independent Drivers Assn. of America* v. *State*, supra, 209 Conn. 686. Rejecting the plaintiffs' argument that the constitutional nature of their lawsuit obviated their need to pursue the administrative remedy, the court held that "the commissioner might conceivably have recognized some applicable illegality with regard to the statute which, even without a declaration of the statute's unconstitutionality, would have led to an award of a refund." (Internal quotation marks omitted.) Id., 688.

Similar to the plaintiffs in *Owners-Operators*, the plaintiff in the present case could conceivably have obtained relief without a resolution of the constitutional challenge. Prior to the passage of P.A. 11-6, § 84, estate taxes were not due on estates with a taxable estate of less than $3.5 million. See General Statutes (Rev. to 2011) § 12-391. The amended § 12-391 (g) (3), which went into effect on May 4, 2011, but which applies to the estates of those who died on or after January 1, 2011, requires the payment of estate taxes if the taxable estate is greater than $2 million.[5] General Statutes § 12-

---

[5] General Statutes § 12-391 (g) (3) provides: "With respect to the estates of decedents dying on or after January 1, 2011, the tax based on the Connecticut taxable estate shall be as provided in the following schedule:

| Amount of Connecticut Taxable Estate | Rate of Tax |
| --- | --- |
| Not over $2,000,000 | None |
| Over $2,000,000 but not over $3,600,000 | 7.2% of the excess over $2,000,000 |
| Over $3,600,000 but not over $4,100,000 | $115,200 plus 7.8% of the excess over $3,600,000 |
| Over $4,100,000 but not over $5,100,000 | $154,200 plus 8.4% of the excess over $4,100,000 |
| Over $5,100,000 but not over $6,100,000 | $238,200 plus 9.0% of the excess over $5,100,000 |
| Over $6,100,000 but not over $7,100,000 | $328,200 plus 9.6% of the excess over $6,100,000 |
| Over $7,100,000 but not over $8,100,000 | $424,200 plus 10.2% of the excess over $7,100,000 |
| Over $8,100,000 but not over $9,100,000 | $526,200 plus 10.8% of the excess over $8,100,000 |
| Over $9,100,000 but not over $10,100,000 | $634,200 plus 11.4% of the excess over $9,100,000 |
| Over $10,100,000 | $748,200 plus 12% of the excess over $10,100,000" |

391. Thus, any estate over $3.5 million whose taxes had not been paid before the May 4, 2011 passage date was required to pay the estate tax under the amended statute even though the decedent had died while the prior statute was in effect.[6]

The complaint alleges, and the trial court must accept as fact for the purposes of a motion to dismiss, that the decedent died a resident of Connecticut after January 1, 2011, and that his taxable estate was in excess of $3.5 million. Under the facts alleged, there is no question that the estate tax applies to the decedent's estate. The decedent's estate was subject to the tax, and the plaintiff was required to pay, or the defendant was required to assess, an estate tax because the taxable estate was in excess of $2 million. After payment of the tax or imposition of the deficiency assessment, however, the plaintiff could have sought a hearing pursuant to § 12-553 to seek "a correction of the amount of the tax, penalty or interest so fixed, setting forth the reasons why such hearing should be granted and the amount of the tax, penalty or interest should be reduced . . . ." General Statutes § 12-553. If the hearing request is granted and such hearing takes place, "the commissioner may make such order . . . as appears to him

---

[6] General Statutes § 12-398 (e) provides an exemption for estates less than $3.5 million whose estate taxes had been paid prior to the May 4, 2011 passage date. It provides in relevant part: "Any person shall be entitled to a certificate of release of lien with respect to the interest of the decedent in such real property, if . . . the [c]ommissioner of [r]evenue [s]ervices finds, upon evidence satisfactory to said . . . commissioner . . . that payment of the tax imposed under this chapter with respect to the interest of the decedent in such real property is adequately assured, or that no tax imposed under this chapter is due. . . . Any certificate of release of lien shall be valid if issued by the probate court prior to May 4, 2011, and recorded in the office of the town clerk of the town in which such real property is situated prior to May 4, 2011, for the estate of a decedent who died on or after January 1, 2011, and whose Connecticut taxable estate is more than two million dollars but equal to or less than three million five hundred thousand dollars. . . ." General Statutes § 12-398 (e).

just and lawful . . . ." General Statutes § 12-553. Thus, the defendant could issue an order granting the plaintiff relief. If she is not satisfied with that order, the plaintiff may pursue an appeal pursuant to § 12-554.[7] Accordingly, the plaintiff failed to exhaust her administrative remedies and, as the court lacked jurisdiction, it properly granted the motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] Because we have determined that the plaintiff has an administrative remedy pursuant to §§ 12-553 and 12-554, we decline to address whether a declaratory ruling pursuant to § 4-176 is a viable administrative remedy.