******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# BOARD OF EDUCATION OF THE TOWN OF STRATFORD ET AL. *v.* CITY OF BRIDGEPORT ET AL.
## (AC 40525)

Keller, Prescott and Harper, Js.

*Syllabus*

The plaintiff boards of education for the towns of Stratford, Trumbull and
  Monroe, and the plaintiff F, a Stratford resident, brought this action
  against the defendants, the State Board of Education, the Commissioner
  of Education, the Board of Education of the City of Bridgeport, the
  city of Bridgeport, the mayor of Bridgeport and Bridgeport's interim
  superintendent of schools, seeking, inter alia, a declaratory judgment
  and injunctive relief in connection with the commissioner's authorizing,
  pursuant to statute (§ 10-264*l* [m] [2]), the Bridgeport board to charge
  neighboring school districts $3000 per year in tuition for each nonresi-
  dent student who attended the city's interdistrict magnet schools. In
  their six count complaint, the plaintiffs alleged, in count one, that the
  commissioner did not apply the criteria set forth in § 10-264*l* (m) (2),
  various constitutional challenges to § 10-264*l* (m) (2) in counts two
  through four, unjust enrichment in count five and civil theft as to the
  Bridgeport defendants in count six. The trial court granted the defen-
  dants' motions to dismiss and render judgment thereon dismissing all
  counts of the complaint for lack of subject matter jurisdiction on the
  ground that the plaintiffs failed to exhaust their administrative remedies
  pursuant to the statute (§ 4-176) that permits any person to petition an
  agency for a declaratory ruling as to the applicability of a statute to
  specified circumstances. On the plaintiffs' appeal to this court, *held*:

1. The plaintiffs could not prevail on their claim that the trial court erred
   by dismissing counts one through four of their compliant against the
   state defendants for lack of subject matter jurisdiction for their failure
   to exhaust their administrative remedies:

   a. The trial court properly dismissed count one of the complaint, the
   plaintiffs having failed to exhaust their administrative remedies; the
   claim in count one, which sought a declaratory ruling as to the applicabil-
   ity of § 10-264*l* (m) (2) to the alleged circumstances, was the type of
   claim that the state board's hearing process was designed and intended
   to address, and, contrary to the plaintiffs' contention, the allegations in
   count one were not the type of special circumstances that our courts
   have determined warrant an exception to the exhaustion requirement,
   and, therefore, the plaintiffs had an available administrative process to
   challenge the commissioner's decision to authorize the charge of tuition,
   and their failure to exhaust this available process prior to commencing
   the present action divested the trial court of subject matter jurisdiction
   over count one.

   b. The trial court properly dismissed counts two, three and four of the
   complaint, which raised various as applied constitutional challenges to
   § 10-264*l* (m) (2), the plaintiffs having failed to exhaust their administra-
   tive remedies as to those counts; because the state board, which, pursu-
   ant to § 4-176, has the power to interpret statutes, was well positioned
   to provide the plaintiffs with the very relief that they sought in the trial
   court if they had brought a petition for a declaratory ruling, and the
   plaintiffs failed to sufficiently show how it would have been demonstra-
   bly futile to file a petition for a declaratory ruling with the state board,
   the plaintiffs did not avail themselves of the administrative process
   available to them and their failure to do so divested the trial court of
   subject matter jurisdiction over those counts of the complaint.

2. The trial court properly dismissed count six of the plaintiff's complaint,
   which alleged that the Bridgeport defendants committed civil theft in
   violation of the applicable statutes (§§ 52-564 and 53a-119 [1], [2], [3]
   and [6]), as that claim was not ripe for review, and, therefore, the court
   lacked subject matter jurisdiction over it; although the plaintiffs claimed
   that the ripeness doctrine did not bar their civil theft claim because
   they sought injunctive relief to prevent the city from unlawfully misap-

propriating the tuition moneys under color of state law and that requiring them to wait until the Bridgeport defendants unlawfully are in receipt of the money would render moot any claim for injunctive relief, injunctive relief was not a remedy available to the plaintiffs under § 52-564, which provides that a party aggrieved under the statute is entitled to treble damages, and the record clearly indicated that no payment for the tuition had in fact been paid out by the plaintiff boards to the Bridgeport defendants and no invoice for tuition had even been sent to the plaintiff boards at the time the Bridgeport defendants filed their motion to dismiss, and, therefore, it was apparent that the plaintiffs had not suffered an injury sufficient to give rise to the alleged civil theft, particularly, in light of their failure to allege that the Bridgeport defendants intentionally deprived them of their property.

Argued January 31—officially released July 23, 2019

*Procedural History*

Action for, inter alia, a declaratory judgment that the defendants' request to charge certain tuition to certain school districts for nonresident students who attend certain magnet schools is erroneous and unlawful, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the Board of Education of the Town of Monroe was added as a party plaintiff; thereafter, the court, *Bellis, J.*, granted the defendants' motions to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Daniel L. Healy*, with whom, on the brief, was *Norman A. Pattis*, for the appellants (plaintiffs).

*Ralph E. Urban*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *George Jepsen*, former attorney general, for the appellees (defendant State Board of Education et al.)

*John R. Mitola*, associate city attorney, for the appellees (named defendant et al.).

*Opinion*

KELLER, J. The plaintiffs, the Board of Education of the Town of Stratford, James Feehan,[1] the Board of Education of the Town of Trumbull, and the Board of Education of the Town of Monroe, appeal from the judgment of the trial court granting the motions to dismiss filed by the defendants, the State Board of Education (state board); the Commissioner of Education (commissioner); the Board of Education of the City of Bridgeport (Bridgeport board); the city of Bridgeport (city); Joseph Ganim, the mayor of the city; and Aresta Johnson, the interim superintendent of the city's schools.[2] On appeal, the plaintiffs claim that the trial court erred by (1) dismissing counts one, two, three, and four of their complaint against the state defendants for lack of subject matter jurisdiction for failing to exhaust their administrative remedies, and (2) dismissing count six, a civil theft claim against the Bridgeport defendants, for lack of subject matter jurisdiction for failing to exhaust their administrative remedies. For the reasons discussed herein, we affirm the judgment of the trial court.

In their verified complaint dated March 16, 2017, the plaintiffs alleged the following facts. The city, the Bridgeport board, and Johnson operate two interdistrict magnet schools, Fairchild Wheeler Interdistrict Magnet School (Fairchild Wheeler) and Interdistrict Discovery Magnet Elementary School (Discovery). The plaintiff boards are required, pursuant to General Statutes § 10-220d, to permit operators of interdistrict magnet schools to recruit students from their districts to attend magnet schools in other districts. Fairfield Wheeler and Discovery, which began operations in 2013, currently serve children from the plaintiffs' districts, in addition to others.

Fairfield Wheeler and Discovery, heretofore, have been operated exclusively with state funds. During the 2016–2017 school year, the parties learned that the state would reduce its grants to these magnet schools by approximately $500,000. On June 30, 2016, Frances Rabinowitz, the predecessor to Johnson as interim superintendent of the city's schools, wrote a letter to the commissioner requesting permission for the city to bill neighboring districts $3000 a year for each nonresident student who attended the magnet schools. By letter dated August 31, 2016, the commissioner granted this request. The plaintiffs alleged that the commissioner's approval of the request to charge outside school districts would result in approximately $1,818,000 in revenue for the city's public school system. This revenue would result in the school system receiving $1,215,000 from the plaintiffs alone, which is $715,000 more than is required to replenish the $500,000 cutback in state funding.[3]

Furthermore, the plaintiffs alleged that the Bridgeport board commingles its operating accounts with the city's general municipal operating accounts. They alleged that this commingling permits the Bridgeport public school district and the city to convert or misappropriate the moneys supplied by the plaintiffs for the purpose of interdistrict magnet school operation to pay for nonmagnet school and noneducational expenses, such as general municipal operating expenses.

The plaintiffs set forth six counts in their complaint. They claimed that (1) the commissioner did not apply the criteria set forth in General Statutes § 10-264$l$ (m) (2)[4] (count one); (2) § 10-264$l$ (m) (2) violates principles of due process as set forth in article first, §§ 1, 2, 8, 10, 11, 18, and 20, of the Connecticut constitution (count two); (3) § 10-264$l$ (m) (2) exceeds the powers implicitly and explicitly granted to the General Assembly in article eighth, § 1, of the Connecticut constitution (count three); (4) § 10-264$l$ (m) (2) violates the plaintiffs' right to home rule in violation of article tenth, § 1, of the Connecticut constitution (count four); (5) unjust enrichment (count five); and (6) civil theft as to the Bridgeport defendants (count six).

On March 24, 2017, the state defendants filed a motion to dismiss, inter alia, counts one through four of the plaintiffs' complaint for lack of subject matter jurisdiction on the basis that the plaintiffs failed to exhaust their administrative remedies contained in General Statutes § 4-176.[5] On April 12, 2017, the Bridgeport defendants also filed a motion to dismiss the plaintiffs' complaint in its entirety on the basis that the court lacked subject matter jurisdiction over the plaintiffs' claims against them. After receiving memoranda of law in support of and in opposition to the motions, the court heard oral argument regarding both motions to dismiss on April 24, 2017.

In a memorandum of decision dated May 10, 2017, the court granted the state defendants' motion to dismiss counts one, two, three, and four of the plaintiffs' complaint for lack of subject matter jurisdiction on the basis that the plaintiffs failed to exhaust their administrative remedies pursuant to § 4-176 prior to commencing the present action. With respect to count five, the dismissal of which is not challenged in this appeal, the court acknowledged that the plaintiffs had conceded that the plaintiffs' unjust enrichment claim against the state defendants was barred by the doctrine of sovereign immunity.

In a separate memorandum of decision dated May 23, 2017, the court recognized that the Bridgeport defendants, in their memorandum of law in support of their motion to dismiss, had expressly adopted the same arguments that had been set forth by the state defendants with respect to counts one, two, three, and four.

Resultantly, in granting the Bridgeport defendants' motion to dismiss with respect to these counts, the court adopted the same reasoning concluding that the plaintiffs failed to exhaust their administrative remedies contained in § 4-176. With respect to counts five and six as alleged against the Bridgeport defendants, the court similarly concluded that it lacked subject matter jurisdiction over their claims because the plaintiffs failed to exhaust their administrative remedies. This appeal followed.

As a preliminary matter, we begin by setting forth the principles of law governing our standard of review. "In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary." (Internal quotation marks omitted.) *Walenski* v. *Connecticut State Employees Retirement Commission*, 185 Conn. App. 457, 464, 197 A.3d 443, cert. denied, 330 Conn. 951, 197 A.3d 390 (2018). This court must decide whether the trial court's "conclusions are legally and logically correct and find support in the facts that appear in the record. . . . It is a familiar principle that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) Id., 464–65.

"When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . Further, in addition to admitting all facts well pleaded, the motion to dismiss invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Citation omitted; internal quotation marks omitted.) *Metropolitan District* v. *Commission on Human Rights & Opportunities*, 180 Conn. App. 478, 485, 184 A.3d 287, cert. denied, 328 Conn. 937, 184 A.3d 267 (2018).

This appeal concerns the proper application of the exhaustion doctrine. "It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 563, 821 A.2d 725 (2003). In other words, "a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum." (Internal quotation marks omitted.) *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 477, 55

A.3d 251 (2012). In the absence of exhaustion of that remedy, the action must be dismissed. *Piteau* v. *Board of Education*, 300 Conn. 667, 678, 15 A.3d 1067 (2011). Thus, "where a statute has established a procedure to redress a particular wrong, a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." *Norwich* v. *Lebanon*, 200 Conn. 697, 708, 513 A.2d 77 (1986).

"A primary purpose of the doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Internal quotation marks omitted.) *Coyle* v. *Commissioner of Revenue Services*, 142 Conn. App. 198, 206, 69 A.3d 310 (2013), appeal dismissed, 312 Conn. 282, 91 A3d 902 (2014).

I

The plaintiffs first claim that the court erred in dismissing counts one through four of their complaint for lack of subject matter jurisdiction on the basis that they failed to exhaust their administrative remedies. The plaintiffs do not dispute that there was an administrative process available to them pursuant to § 4-176 (a). They also do not dispute that they did not avail themselves of that process. Rather, the plaintiffs argue that they were not required to exhaust their administrative remedies through this process because "the claims against the state defendants . . . involve the 'special circumstances' exception [to the exhaustion doctrine], or, in the alternative, the constitutional question exception to the exhaustion requirement . . . ."

Our Supreme Court repeatedly has held that "when a plaintiff can obtain relief from an administrative agency by requesting a declaratory ruling pursuant to § 4-176, the failure to exhaust that remedy deprives the trial court of subject matter jurisdiction over an action challenging the legality of the agency's action." *Republican Party of Connecticut* v. *Merrill*, supra, 307 Conn. 478, citing *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 557–58, 630 A.2d 1304 (1993) (plaintiff's claim for injunctive relief barred by exhaustion doctrine

because plaintiff failed to seek declaratory ruling from Commissioner of Environmental Protection pursuant to § 4-176). The exhaustion doctrine, however, like many judicial doctrines, is subject to several exceptions. See *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 565. These exceptions have been employed infrequently and used only for narrowly defined purposes "such as when recourse to the administrative remedy would be futile or inadequate." (Internal quotation marks omitted.) Id.

Our Supreme Court has made clear that "a plaintiff may not circumvent the requirement to exhaust available administrative remedies merely by asserting a constitutional claim. . . . [S]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. . . . [D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore. . . . [W]e continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy. . . .

"Limiting the judicial bypass of colorable constitutional claims to those instances of demonstrable futility is consistent with our duty to eschew unnecessarily deciding constitutional questions . . . . Pursuant to that duty, we must limit circumvention of administrative proceedings to instances in which those proceedings would be futile because no adequate administrative remedy exists. Moreover, the mere assertion in an administrative proceeding of a constitutional challenge to a statute or agency procedure does not automatically satisfy the futility exception to the exhaustion doctrine. To determine whether a party properly may seek court intervention prior to the completion of administrative proceedings, we examine whether the court has been asked to address issues entrusted to the [commissioner] and whether the [commissioner] could issue appropriate relief." (Citations omitted; internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 813–14, 12 A.3d 852 (2011).

A

With respect to count one of the plaintiffs' complaint, which alleged that the commissioner failed to comply with § 10-264*l* (m) (2) in rendering her initial authorization allowing the Bridgeport board to charge $3000 in tuition per pupil to the suburban school districts sending students to Fairfield Wheeler and Discovery, the plaintiffs essentially argue that, although on its face count one "looks and sounds like the very sort of issue the [state] board's hearing process was designed and intended to address," the "complaint as a whole sounds in the use of the education financing statute as a form

of indirect taxation." They argue that this tuition amounts to indirect taxation and is not the sort of issue that the state board's hearing process was designed to address. The plaintiffs acknowledge that count one does not raise a constitutional question, but they contend that the facts of the present case constitute special circumstances warranting an exception to the exhaustion requirement as our appellate courts have recognized in other instances.

In support of their arguments, the plaintiffs direct our attention to our Supreme Court's decisions in *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 797 A.2d 494 (2002), and *McKinney* v. *Coventry*, 176 Conn. 613, 410 A.2d 453 (1979). In both cases, the court considered a collateral challenge to the imposition of a tax based on the plaintiffs' claims that the tax in those cases were unconstitutional. In *Stepney Pond Estates, Ltd.*, the court determined, on the basis of the rationale set forth in *McKinney*, that the trial court did not lack jurisdiction to hear the claim because the plaintiff "challenge[d] the validity of the tax in the first instance," not that the tax "was improperly calculated." *Stepney Pond Estates, Ltd.* v. *Monroe*, supra, 420.

The plaintiffs acknowledge that *Stepney Pond Estates, Ltd.*, and *McKinney* are not "perfect fits" with respect to count one. We agree with them to that extent. It is clear from the language of count one that the plaintiffs are not challenging the constitutionality of the statute itself; they explicitly acknowledge in their appellate brief that count one is not constitutional in nature. Thus, it appears that the plaintiffs' reliance on *Stepney Pond Estates, Ltd.*, and *McKinney*, which involved facial constitutional challenges to tax statutes, is misplaced with respect to count one. Nevertheless, the plaintiffs argue that one of the paragraphs in count one "frames the issue as more than mere misapplication of a technical statute," and further contend that "the commissioner ignored the statutory requirements altogether—the functional equivalent of denying a hearing, resulting in default." If anything, this argument is more akin to a claim raised in *LaCroix* v. *Board of Education*, 199 Conn. 70, 505 A.2d 1233 (1986), where the plaintiff alleged that the defendant board of education violated his right to due process by failing to provide him a hearing prior to, and for four months subsequent to, terminating his employment contract. Even so, in light of the facts of this case, we conclude that *LaCroix* is no more availing for the plaintiffs.

We read count one of the plaintiffs' complaint as a challenge to the commissioner's application of the criteria set forth in § 10-264*l* (m) (2) in authorizing the Bridgeport board to charge tuition to the suburban school districts. Although they attempt to argue that this count is actually a challenge to "indirect taxation" by the defendants and that the state board is ill equipped

to review this type of claim, our review of the allegations in count one lead us to conclude that this is just the type of claim that the state board's hearing process was designed and intended to address. As the trial court correctly noted, the plaintiffs "[sought] a declaratory ruling as to the applicability of § 10-264*l* (m) (2) to the alleged circumstances, which is precisely the relief that the relevant agency, namely, the state board, has the statutory authority to provide pursuant to § 4-176 and by way of the rules set forth in §§ 10-4-21 and 10-4-22 of the [Regulations of Connecticut State Agencies]."[6] Despite the plaintiffs' asseverations, the allegations in count one are not the type of special circumstances that our courts have determined warrant an exception to the exhaustion requirement. Simply put, the plaintiffs had an available administrative process to challenge the initial tuition authorization by the commissioner where they could have informed the state board of what they perceived to be error in the commissioner's decision. Their failure to exhaust this available process prior to commencing this action divested the court of subject matter jurisdiction over count one. See *LaCroix* v. *Board of Education*, supra, 199 Conn. 78 (our courts "have long adhered to the rule that, where a statutory right of appeal from an administrative decision exists, an aggrieved party may not bypass the statutory procedure and instead bring an independent action to test the very issue which the appeal was designed to test" [internal quotation marks omitted]). The court, therefore, properly dismissed count one for lack of subject matter jurisdiction.

B

With respect to counts two through four of their complaint, the plaintiffs contend that each one raises independent constitutional claims warranting an exception to the exhaustion requirement. They argue that even if this court concluded that count one fell within the state board's regulatory ambit, the constitutional claims do not. In particular, they argue that the constitutional claims are independent, do not involve agency expertise or discretion, and are the type of constitutional claims our courts recognize as warranting an exception to the exhaustion requirement. In their appellate brief, the plaintiffs categorize counts two through four as follows: "Count two contends that this unusual tax amounts to a due process violation, depriving the [plaintiffs] of property without due process of law arising under the state constitution. Count three contends that this tax is imposed by executive fiat, and not legislative process, in violation [of] the state constitution's separation of powers doctrine. Count four contends that the tax in question is imposed in violation of the state constitution's home rule provision, effectively giving one town permission to tax residents of adjoining municipalities."

The defendants maintain that the plaintiffs' arguments on appeal evince a complete reversal of their characterization of the counts as represented to the trial court. Namely, they argue that the plaintiffs repeatedly characterized their constitutional claims as "as applied" before the trial court, but now, on appeal, make arguments that can only be read as being "facial" constitutional challenges. The defendants thus argue that the plaintiffs are bound by their representations to the trial court and may not pursue before this court a legal theory they did not pursue before the trial court.

This court has often stated that to allow a plaintiff to pursue one theory before the trial court and then to press a distinctly different theory on appeal would amount to an ambuscade of the trial court. See *Jahn* v. *Board of Education*, 152 Conn. App. 652, 665, 99 A.3d 1230 (2014). In such instances, we have declined to review those claims. See, e.g., *AvalonBay Communities, Inc.* v. *Zoning Commission*, 130 Conn. App. 36, 62 and n.24, 21 A.3d 926, cert. denied, 303 Conn. 909, 32 A.3d 962 (2011). To the extent that the plaintiffs are arguing on appeal that counts two through four of their complaint are facial constitutional challenges, we decline to review them as such. As the defendants correctly note, the plaintiffs argued explicitly before the trial court that counts two through four were as applied constitutional challenges. Accordingly, we will review whether these counts alleging as applied constitutional caims were properly dismissed by the trial court for the plaintiffs' failure to exhaust available administrative remedies.

The plaintiffs first rely on *LaCroix* v. *Board of Education*, supra, 199 Conn. 70, a case in which our Supreme Court allowed a plaintiff teacher to bring a civil action based on a due process property right violation because the defendant board failed to follow the process required by the Teacher Tenure Act, General Statutes § 10-151 (b), when it terminated the plaintiff's employment without first providing him a hearing. Id., 71–72. Under the specific factual circumstances of *LaCroix*, the court recognized an exception to the doctrine of exhaustion of administrative remedies and held that "the plaintiff's failure to follow the administrative appeal route to challenge the . . . termination did not preclude him from bringing a collateral judicial action to test this basic constitutional infirmity in the [defendant] board's termination process." Id., 81. The court explained that two circumstances led it to that conclusion: "the plaintiff's timely request for a hearing [was] evidence that he did not deliberately decide to bypass the statutory appeal route, and the defendant board's unwillingness to provide the hearing within the statutory period was a significant contributing factor in the plaintiff's failure to pursue a direct appeal." Id. The court explained that "the defendant's total default

relieved the plaintiff of the obligation to pursue further administrative steps, and permitted the plaintiff to invoke judicial remedies to vindicate his constitutional rights to due process." Id.

Although the plaintiffs assert broadly that counts two through four raise independent constitutional claims warranting an exception to the exhaustion requirement equivalent to the exception recognized in *LaCroix*, the facts of the present case bear little similarity to those of *LaCroix*. *LaCroix* involved an instance where the court permitted a plaintiff to bring a collateral judicial action when he did not deliberately bypass the statutory appeal route but, instead, was constrained by the defendant board's failure to hold a timely hearing. In the present case, however, the plaintiffs were not constrained or limited by the defendants in any way, and could have availed themselves of the administrative appeal process available to them but deliberately chose not to. See General Statutes § 4-176.

The plaintiffs additionally rely on *McKinney* v. *Coventry*, supra, 176 Conn. 613, and *Stepney Pond Estates, Ltd.* v. *Monroe*, supra, 260 Conn. 406, for the contention that the facts of the present case warrant an exception to the exhaustion requirement like the "collateral challenge" doctrine invoked in those cases, which involved constitutional challenges to tax statutes. The evident flaw with the plaintiffs' argument is the fact that they made as applied constitutional challenges and sought relief that could have been provided to them by the state board.

As we noted previously, in both *McKinney* and *Stepney Pond Estates, Ltd.*, our Supreme Court considered collateral challenges to the imposition of a tax on the basis of the plaintiffs' claims that the taxes in those cases were unconstitutional. In *Stepney Pond Estates, Ltd.*, the court determined, on the basis of the rationale set forth in *McKinney*, that the trial court did not lack jurisdiction to hear the claim because the plaintiff "challenge[d] the validity of the tax in the first instance," not that the tax "was improperly calculated." *Stepney Pond Estates, Ltd.* v. *Monroe*, supra, 260 Conn. 420.

In the present case, however, the plaintiffs explicitly argued before the trial court that their claims were "as applied challenge[s] and [were] not challenging the legislation . . . ." Furthermore, they argued that the law "permit[s] them to question [the commissioner's] interpretation and that is precisely what they are doing in this as applied challenge." Thus, the plaintiffs' arguments make clear that they were not facially challenging the constitutionality of § 10-264*l* (m) (2) in the first instance, but, rather, the constitutionality of the commissioner's interpretation and calculation of the tuition under § 10-264*l* (m) (2) as applied to them. Accordingly, their constitutional challenges would not have required the state board to strike down the statute as unconstitu-

tional—a power the state board lacks. Instead, their challenges, when properly construed, simply would have permitted the state board to declare that the statute could not be applied to the plaintiffs under the particular circumstances of the present case, a power the state board most certainly could have exercised. The state board, to which the legislature has conferred the power to interpret statutes and regulations pursuant to § 4-176, was well positioned to provide the plaintiffs with the very relief that they sought in the trial court had they brought a petition for a declaratory ruling. See *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 588–89, 424 A.2d 285 (1979) (declaratory judgment action seeking determination that certain lease provisions violated state statute barred by exhaustion doctrine because plaintiff failed to seek declaratory ruling from real estate commission pursuant to § 4-176, which confers on state agencies power to interpret statutes and regulations). Moreover, our courts "continue to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 571.

The plaintiffs have not sufficiently shown how it would have been demonstrably futile to file a petition for a declaratory ruling with the state board. In fact, our review of the record discloses that the process the plaintiffs had available to them would have given them the opportunity to challenge the commissioner's interpretation of the statute and ultimate award of tuition.[7] This process could have then corrected any of the purported errors with respect to the commissioner's interpretation of the statute or the approval of the tuition award, which would have remedied the constitutional concerns the plaintiffs alleged in their complaint. If the plaintiffs were not satisfied with the resolution of the petition, they could have subsequently brought a declaratory judgment action in the Superior Court. See General Statutes § 4-183.

The plaintiffs in this case did not avail themselves of the administrative process available to them before first filing an action in the Superior Court. Consequently, their failure to do so divested the court of subject matter jurisdiction over counts two, three, and four of their complaint.

II

The plaintiffs claim next that the court erred by dismissing count six, a civil theft claim against the Bridgeport defendants, for lack of subject matter jurisdiction for failing to exhaust their administrative remedies. We need not, however, reach this issue because we conclude that the court lacked subject matter jurisdiction over this claim for another reason, namely, because the claim is not ripe for adjudication.[8]

In count six of the plaintiffs' complaint, they alleged that the actions of the Bridgeport defendants will at some future point, constitute civil theft as set forth in General Statutes §§ 52-564 and 53a-119 (1), (2), (3), and (6).[9] In particular, the plaintiffs allege that the Bridgeport defendants (1) will embezzle insofar as they have overstated the tuition costs necessary to operate the magnet schools and have done so with the intent to deprive the plaintiff boards of operating funds by misappropriating interdistrict magnet school revenues to municipal operating costs that are unassociated with the operation of the magnet schools; (2) will commit larceny by false pretenses insofar as they are submitting a false pretense, token, or device in the form of a request to charge the plaintiff boards tuition that overstates the necessary operating costs of the magnet schools; (3) will commit larceny by false promise insofar as they are promising to serve the students of the plaintiff boards with $1,818,000 of tuition and only intend to serve those students with approximately $500,000 worth of tuition; and (4) will defraud a public community insofar as they have authorized, certified, attested, or filed a request to charge the plaintiff boards that they know to be false, and they are knowingly accepting the benefits resulting from the request to charge from a public community.

The Bridgeport defendants moved to dismiss count six on the basis that the court lacked subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies and because the plaintiffs' claim was not ripe. The plaintiffs filed an opposition to the Bridgeport defendants' motion. In the court's memorandum of decision dated May 23, 2017, it concluded that "the issue of whether the plaintiffs' claims are ripe for review is immaterial as the court lack[ed] subject matter jurisdiction over the plaintiffs' claims because the plaintiffs . . . failed to exhaust their administrative remedies."

In their principal brief on appeal, the plaintiffs argued that they need not exhaust their administrative remedies prior to bringing the underlying claim because the state board does not have the authority to hear claims regarding theft or misappropriation of moneys. The Bridgeport defendants argued that the court was correct in dismissing count six on this ground. Although the parties argued the issue of ripeness before the trial court, there was little discussion of it in their appellate briefs. On May 17, 2019, following oral argument before this court, we issued an order notifying the parties that they were permitted to file a supplemental brief on the issue of whether the trial court lacked subject matter jurisdiction over count six because the statutory theft claim was not ripe. The plaintiffs, the Bridgeport defendants, and the state defendants each filed a supplemental brief by the May 31, 2019 deadline.

In the defendants' supplemental briefs, they argue that the plaintiffs' civil theft claim is not ripe because the record before this court unequivocally reflects that the Bridgeport defendants have not collected or received any tuition from the plaintiffs, and that no invoice for the tuition payments was even sent to the plaintiff boards at the time the Bridgeport defendants filed their motion to dismiss. They observe that the plaintiffs do not dispute that they have not made any of the payments at issue. They observe, as well, that no theft, civil or otherwise, can occur absent the loss of property. The plaintiffs argue, however, that the ripeness doctrine does not bar the action. They argue that the plaintiffs sought injunctive relief to prevent the city from unlawfully misappropriating moneys under color of state law and that requiring the plaintiffs to wait until the Bridgeport defendants unlawfully are in receipt of the moneys would render moot any claim for injunctive relief.

"[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 111 Conn. App. 80, 82, 957 A.2d 536 (2008). "A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction." *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 91, 713 A.2d 1267 (1998). "The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 531–32, 46 A.3d 102 (2012).

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86–87, 952 A.2d 1 (2008).

The plaintiffs argue that the ripeness doctrine does not bar their claim in count six because they sought injunctive relief to prevent the city from unlawfully misappropriating the tuition moneys under color of state law and that requiring them to wait until the Bridgeport defendants unlawfully are in receipt of the moneys would render moot any claim for injunctive relief. This argument is not persuasive. First, as stated previously, the plaintiffs alleged in count six that the Bridgeport defendants committed civil theft in violation of §§ 52-564 and 53a-119 (1), (2), (3), and (6). Section

52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner *treble his damages*." (Emphasis added.) We have held that "[s]tatutory theft under . . . § 52-564 is synonymous with larceny [as provided in] . . . § 53a-119." (Internal quotation marks omitted.) *News America Marketing In-Store, Inc.* v. *Marquis*, 86 Conn. App. 527, 544, 862 A.2d 837 (2004), aff'd, 276 Conn. 310, 885 A.2d 758 (2005). Pursuant to § 53a-119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

Although the plaintiffs attempt to obfuscate the issue by arguing that dismissing count six will render moot its claim for injunctive relief, we remind the plaintiffs that injunctive relief is not a remedy available to them under the statutory theft statute. See General Statutes § 52-564. Rather, a party aggrieved under the statute is entitled to treble damages. General Statutes § 52-564. In the present case, the record makes clear that no payment for the tuition has in fact been paid out by the plaintiff boards to the Bridgeport defendants. Additionally, as the Bridgeport defendants note in their supplemental brief, no invoice for tuition had even been sent to the plaintiff boards at the time they filed their motion to dismiss. Thus, it is apparent that the plaintiffs have not suffered an injury sufficient to give rise to the cause of action alleged. In particular, the plaintiffs failed to allege that the Bridgeport defendants intentionally deprived them of their property. See *Mystic Color Lab, Inc.* v. *Auctions Worldwide, LLC*, 284 Conn. 408, 418–19, 934 A.2d 227 (2007) ("[s]tatutory theft . . . requires an element over and above what is necessary to prove conversion, namely, that the defendant intentionally deprived the complaining party of his or her property"); see also *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771–72, 905 A.2d 623 (2006) ("[M]oney can be the subject of statutory theft. . . . The plaintiffs must establish, however, legal ownership or right to possession of specifically identifiable moneys." [Citation omitted.]). We also note that it would be impossible for a court to treble the plaintiffs' damages when no damages have been incurred in the first place. On the basis of the foregoing, we have little difficulty concluding that count six was not ripe for review and, thus, the trial court lacked subject matter jurisdiction over it. Accordingly, we conclude, albeit on a different jurisdictional ground than that on which the court relied, that the court properly dismissed count six of the plaintiffs' complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint alleges that "Feehan is a resident and taxpayer of the town of Stratford and a resident of the Stratford public school district.

Additionally, he is the chairman of the Stratford Board of Education."

[2] For ease of exposition, we refer to the state board and the commissioner as the state defendants, and to the Bridgeport board, the city, Mayor Ganim, and Johnson, as the Bridgeport defendants. Any reference in this opinion to the defendants, refers to all the defendants. We will, however, refer to individual parties as necessary.

[3] We note that the complaint is conspicuously devoid of any allegations of loss with respect to Feehan as a Stratford taxpayer.

[4] General Statutes § 10-264*l* (m) (2) provides: "For the school year commencing July 1, 2015, and each school year thereafter, any interdistrict magnet school operator that is a local or regional board of education and did not charge tuition to a local or regional board of education for the school year commencing July 1, 2014, may not charge tuition to such board unless (A) such operator receives authorization from the Commissioner of Education to charge the proposed tuition, and (B) if such authorization is granted, such operator provides written notification on or before September first of the school year prior to the school year in which such tuition is to be charged to such board of the tuition to be charged to such board for each student that such board is otherwise responsible for educating and is enrolled at the interdistrict magnet school under such operator's control. In deciding whether to authorize an interdistrict magnet school operator to charge tuition under this subdivision, the commissioner shall consider (i) the average per pupil expenditure of such operator for each interdistrict magnet school under the control of such operator, and (ii) the amount of any per pupil state subsidy and any revenue from other sources received by such operator. The commissioner may conduct a comprehensive financial review of the operating budget of the magnet school of such operator to verify that the tuition is appropriate. The provisions of this subdivision shall not apply to any interdistrict magnet school operator that is a regional educational service center or assisting the state in meeting the goals of the 2008 stipulation and order for Milo Sheff, et al. v. William A. O'Neill, et al., as extended, or the goals of the 2013 stipulation and order for Milo Sheff, et al. v. William A. O'Neill, et al., as extended."

[5] General Statutes § 4-176 provides in relevant part: "(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency. . . ."

[6] Section 10-4-21 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) Who May File. Any interested person(s) . . . may petition the agency, as appropriate, to issue a declaratory ruling regarding the validity of any regulation or the applicability to specified circumstances of any statute, regulation or order enforced, administered or promulgated by the agency. . . ." Subsection (b) of the regulation sets forth the petition requirements.

Section 10-4-22 of the Regulations of Connecticut State Agencies sets forth the procedure following the filing of a petition for a declaratory ruling.

[7] We acknowledge that the parties argued before the trial court the issue of whether Feehan had taxpayer standing to bring an action. We agree with the trial court, that, even if we assumed that he did have taxpayer standing, he, like the plaintiff school boards, was required to exhaust the administrative remedy of filing a petition for a declaratory ruling with the state board.

[8] Although the ripeness issue was raised before the trial court, it never decided the issue. Our Supreme Court has stated that "[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court. . . . This rule applies equally to alternate grounds for affirmance." (Emphasis added; internal quotation marks omitted) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 498–99, 43 A.3d 69 (2012). One such exceptional circumstance is a claim that implicates the trial court's subject matter jurisdiction, which may be raised at any time and, thus, is not subject to our rules of preservation. Id., 500 n.23; see *Gerardi* v. *Bridgeport*, 294 Conn. 461, 466–67, 985 A.2d 328 (2010). Because ripeness implicates the court's subject matter jurisdiction; *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86, 952 A.2d 1 (2008); it is proper for us to consider it as an alternative ground for affirmance of the trial court's dismissal of count six.

[9] In the plaintiffs' memorandum of law in opposition to the defendants' motions to dismiss, they acknowledged that, as of the date they filed the complaint, they had made no tuition payments to the Bridgeport board.